IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT PARK NETWORKS, LLC,[1] | Case No. 14-10520 (MFW) |
| Debtor. | Objection Deadline: April 8, 2014 at 4:00 p.m. (ET)<br>Hearing Date: April 15, 2014 at 3:00 p.m. (ET) |

**APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF GENOVESE JOBLOVE & BATTISTA, P.A. AS COUNSEL TO THE DEBTOR *NUNC PRO TUNC* TO MARCH 10, 2014**

The above-captioned debtor and debtor-in-possession (the "**Debtor**") hereby submits this application (the "**Application**") pursuant to sections 327(a), 328(a) and 1107(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rules 2014(a), 2016(b), and 5002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order: (a) authorizing the retention and employment of Genovese Joblove & Battista, P.A. ("**GJB**") as counsel to the Debtor *nunc pro tunc* to March 10, 2014; and (b) providing any additional relief necessary to effectuate the foregoing. The facts and circumstances supporting this Application are set forth herein, in the declaration of Heather L. Harmon (the "**Harmon Declaration**"), attached hereto as **Exhibit "A"**, and in the statement of Heather L. Harmon made pursuant to section 329 of the Bankruptcy Code and Bankruptcy Rule 2016 (the "**2016 Statement**"), attached hereto as **Exhibit "B"**, each of which is incorporated herein by reference. In support of this Application, the Debtor relies on the *Declaration of Jeffrey E. Kwatinetz in Support of Chapter 11 Petition* (the "**Kwatinetz Declaration**"), filed contemporaneously with this Motion, and the Debtor respectfully states as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 8495. The Debtor's headquarters and mailing address is 1840 Century Park East, 18th Floor, Los Angeles, California 90067.

### JURISDICTION, VENUE, AND STATUTORY PREDICATES

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief sought herein are sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016(b), and 5002, and Local Rule 2014-1.

### BACKGROUND

3. On March 10, 2014 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. The Debtor has continued in possession of its assets and is operating and managing its affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request has been made for the appointment of a trustee or examiner, and a creditors' committee has not yet been appointed in this case (the "**Chapter 11 Case**").

6. In April 2011, American Broadcasting Companies ("**ABC**") announced the cancellation of its storied soap operas *One Life to Live* ("**OLTL**") and *All My Children* ("**AMC**"). Seeing an opportunity to launch new episodes of these soap operas as original content for online consumption, the Debtor entered into an exclusive license agreement with ABC for all of the elements of OLTL and AMC – storylines, characters, themes and plots. In the agreement, ABC promised not to do anything to hinder the Debtor's exercise of its rights over the shows.

7. Not long after the Debtor was compelled to suspend an early launch of the online series, ABC asked to "borrow" certain OLTL characters for use on ABC's remaining soap,

*General Hospital* ("**GH**"), in a limited and short-term capacity. ABC promised consultation, script approval, and expressly swore not to do any damage to the "canon" of OLTL. Yet, even before the ink dried on the parties' agreement, ABC began unilaterally changing key storylines and themes, literally killing some OLTL characters and deeply integrating others into the GH landscape, all to create a mega soap of GH behind the Debtor's back. The changes bewildered and alienated longtime OLTL fans. ABC even went so far as to induce the actors who had been playing some of the more popular characters on OLTL to sign secret, exclusive, multi-year contracts with ABC — all without a word to the Debtor.

8.  When the Debtor announced in December 2012 that it had raised the tens of millions of dollars necessary to produce new shows, ABC's reaction was swift and punitive. ABC refused to run advertising for the new shows, refused to permit the Debtor access to the shows' social media and websites, attempted to prevent guest appearances by the OLTL actors on ABC's talk shows and even interfered with third party agreements. Confronted with losing its entire investment or trying to pick up the pieces and press on, the Debtor eventually produced one new season of OLTL and of AMC. But, the damage could not be undone, nor the fans reclaimed. As a consequence of ABC's fraud and its multiple breaches of both the express terms of the parties' contract and the implied covenant of good faith and fair dealing included in every contract in California, the Debtor has sustained the loss of its investment of over $30 million, as well as the profits that it stood to make had ABC acted as the partner it had held itself out to be.

9.  On April 18, 2013, the Debtor commenced an action against ABC in the Superior Court of the State of California, County of Los Angeles, seeking recovery of its damages and other available relief resulting from ABC's actions (the "**ABC Lawsuit**").

3

10. Meanwhile, the Debtor's income stream from agreements with Hulu, LLC and Apple, Inc. for the distribution of the newly produced episodes of OLTL and AMC (through the online video services Hulu and iTunes, respectively) proved insufficient to meet all of the Debtor's liabilities incurred in connection with the production of those shows, particularly in light of the significant legal expenses being incurred by the Debtor in prosecuting the ABC Lawsuit. Moreover, the Debtor experienced substantial difficulties and delays in monetizing a tax credit sale agreement with Apple, Inc. relating to a multi-million dollar tax credit voucher which it is entitled to receive from the State of Connecticut (the "**Tax Credit**").

11. Ultimately, certain of the Debtor's creditors initiated potentially precipitous collection actions, including requests for the entry of pre-judgment attachment of the Debtor's entitlement to the Tax Credit. The Debtor commenced these Chapter 11 proceedings to preserve its assets for the benefit of all creditors and stake-holders, and to restructure its liabilities and reorganize its financial affairs while continuing to vigorously prosecute its claims in the ABC Lawsuit.

### RELIEF REQUESTED

12. By this Application, the Debtor respectfully requests that this Court enter an order authorizing the employment and retention of GJB as its counsel in this Chapter 11 Case *nunc pro tunc* to March 10, 2014 (the "**Petition Date**"), to perform services that will be necessary during this Chapter 11 Case pursuant to the terms set forth in this Application and in the Harmon Declaration.

13. The Debtor seeks to retain GJB because of the firm's general experience and knowledge in the field of debtor and creditor rights and business reorganizations under chapter 11 of the Bankruptcy Code. Moreover, GJB is especially well suited for the type of

representation required by the Debtor. In particular, GJB's attorneys have been involved in many of the largest and most complicated business reorganizations in jurisdictions across the country.

14. John Genovese, Michael Schuster, and Heather Harmon, the attorneys who will be primarily responsible for this matter on behalf of GJB, have each been admitted in this matter pro hac vice by Orders dated March 12, 2014. *See* Docket Nos. 9, 10 and 11.

15. Accordingly, the Debtor has determined that GJB has the resources and experience necessary to represent it in this case. The Debtor believes that GJB's employment is in the best interest of the Debtor, its estate and its creditors. Thus, the Debtor desires that GJB represent it in connection with this case.

## SCOPE OF EMPLOYMENT

16. The professional services that GJB expects to render to the Debtor include, but shall not be limited to, the following:

    a.    providing legal advice with respect to the Debtor's powers and duties as a debtor-in-possession in the continued operation of its affairs and management of its property;

    b.    negotiating, drafting, and pursuing all documentation necessary in the Chapter 11 Case;

    c.    preparing on behalf of the Debtor all applications, motions, answers, orders, reports, and other legal papers necessary to the administration of the Debtor's estate;

    d.    appearing in Court and protecting the interests of the Debtor before the Court;

    e.    assisting with any disposition of the Debtor's assets, by sale or otherwise;

    f.    negotiating and taking all necessary or appropriate actions in connection with a plan or plans of reorganization and all related documents thereunder and transactions contemplated therein;

  g. attending all meetings and negotiating with representatives of creditors, the United States Trustee, and other parties-in-interest;

  h. providing legal advice regarding bankruptcy law, litigation and other issues to the Debtor; and

  i. performing all other legal services for, and providing all other necessary legal advice to, the Debtor, which may be necessary and proper in this Chapter 11 Case.

17. Subject to the Court's approval of this Application, GJB has indicated that it is willing to serve as counsel to the Debtor in this Chapter 11 Case and to perform the services described above.

### DISINTERESTEDNESS OF PROFESSIONALS

17. Except as set forth in the Harmon Declaration, to the best of the Debtor's knowledge, the shareholders, counsel and associates of GJB: (a) do not have any connection with any of the Debtor, its creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party in interest; (b) are "disinterested persons," as that term is defined in Section 101(14) of the Bankruptcy Code; and (c) do not hold or represent any interest adverse to the Debtor's estate.

18. More specifically, as set forth in the Harmon Declaration:

  (a) Neither GJB nor any attorney at the firm holds or represents an interest adverse to the Debtor's estates.

  (b) Neither GJB nor any attorney at GJB is a creditor, an equity holder, or an insider of the Debtor, except that GJB previously rendered legal services to the Debtor for which it was compensated; any remaining balance owed to GJB for pre-petition services has been voluntarily written-off and adjusted to $0.00.

  (c) Neither GJB nor any attorney at GJB is or was, within two years before the Petition Date, a director, officer or employee of the Debtor.

  (d) GJB does not have an interest materially adverse to the interests of the Debtor's estates or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason.

## PROFESSIONAL COMPENSATION

19. Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person on any reasonable terms and conditions of employment, including on an hourly basis. *See* 11 U.S.C. § 328(a). GJB intends to apply for compensation for professional services rendered in connection with this Chapter 11 Case subject to the approval of this Court and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of this Court, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by GJB. GJB submits the 2016 Statement attached hereto as **Exhibit "B"** pursuant to Bankruptcy Rule 2016 and section 329 of Bankruptcy Code, and incorporates such statement herein by reference. The current hourly rates applicable to the principal attorneys and paralegals of GJB proposed to represent the Debtor are as follows:

| Professional | Rate Per Hour |
| --- | --- |
| John H. Genovese | $650.00 |
| Heather L. Harmon | $440.00 |
| Michael L. Schuster | $350.00 |
| Elizabeth Kelly, Paralegal | $195.00 |

20. Other attorneys and paralegals will render services to the Debtor as needed. As of the date of the Harmon Declaration, GJB's current hourly rates range from $375 to $650 per hour for partners, $240 to $375 per hour for associates, and $125 to $195 per hour for legal assistants and paralegals. The Debtor understands that the hourly rates set forth above are subject to periodic adjustments in the ordinary course of business.

21. The hourly rates set forth above are GJB's standard hourly rates for work of this nature. These rates are set at a level designed to fairly compensate GJB for its work and to cover fixed and routine overhead expenses. It is GJB's policy to charge its clients in all areas of

practice for expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, photocopying, witness fees, travel expenses, filing and recording fees, long distance telephone calls, postage, express mail and messenger charges, computerized legal research charges and other computer services, expenses for "working meals," and telecopier charges. GJB will charge the Debtor for these expenses in a manner and at rates consistent with charges made generally to its other clients, subject to this Court's approval of such expenses pursuant to the Bankruptcy Code, such Bankruptcy Rules as may from time to time be applicable, such Local Rules as may from time to time be applicable, and such procedures as may be fixed by order of this Court. GJB believes that failure to charge these expenses would require the firm to increase its current hourly rates.

22. In addition, GJB intends to seek compensation for all time and expenses associated with its retention in accordance with sections 330 and 331 of the Bankruptcy Code and any orders of this Court, including the preparation of this Application, the Harmon Declaration, the 2016 Statement, and related documents, as well as any monthly fee statements or interim or final fee applications.

23. Other than as set forth herein, there is no proposed arrangement to compensate GJB. GJB has not shared, nor agreed to share: (a) any compensation it has received or may receive with any other party or person, other than with the partners and associates of GJB; or, (b) any compensation another person or party has received or may receive.

### GJB's Pre-Petition Representation of the Debtor

24. GJB's representation of the Debtor began on or about November 14, 2013. Over the ensuing months, GJB assisted the Debtor by, *inter alia*, communicating with its creditors and in pursuing recovery of the Tax Credit.

25. On February 18, 2014, GJB received $20,000 from the Debtor into its attorney trust account. On March 4, 2014, GJB transferred the amount of $20,000 from its trust account to its operating account in partial satisfaction of its then-outstanding fees and costs incurred in its representation of the Debtor.

26. On March 7, 2014, GJB received $120,000 from the Debtor into its attorney trust account. On March 10, 2014, GJB transferred the amount of $15,000 from its trust account to its operating account in partial satisfaction of its then-outstanding fees and costs incurred in its representation of the Debtor. The remaining balance of $18,612.80 in fees and costs owed to GJB for pre-petition work has been written-off, adjusted to zero, and waived in all respects.

27. Also on March 10, 2014, GJB transferred the amount of $15,000 from its trust account to the trust account of Cousins Chipman & Brown, LLP, as its retainer for services to be rendered as proposed local counsel to the Debtor.

28. Accordingly, as of the filing of this Chapter 11 case, GJB held the amount of $90,000 in its trust account, which it proposes to use as a general retainer for fees and costs to be incurred in its representation of the Debtor through the course of this Chapter 11 case, subject in all respects to approval of this Court (the "**Retainer**").

29. The Retainer secured the payment of fees for legal services rendered and expenses incurred by GJB prior to the Petition Date and, to the extent of any unused portion of the Retainer, to secure the payment of GJB's fees and expenses to be incurred in these cases. As set forth in the Harmon Declaration and the 2016 Statement, GJB applied a portion of the Retainer to its prepetition fees and expenses and, subject to further order of the Court, will hold the unused balance to secure payment of postpetition fees and expenses.

## BASIS FOR RELIEF

29. Section 327(a) of the Bankruptcy Code provides that:

>	Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

>	30.	Moreover, Bankruptcy Rule 2014(a) requires that a retention application include:

>	[S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

>	31.	The Debtor has selected GJB as counsel because of GJB's extensive experience and knowledge in the field of debtor and creditor rights and business reorganizations under chapter 11 of the Bankruptcy Code. Thus, the Debtor believes that GJB is the best qualified law firm to act as counsel for the Debtor in connection with this Chapter 11 Case. Moreover, the Harmon Declaration and the 2016 Statement demonstrate that: (a) GJB does not represent or hold any interest adverse to the Debtor or its estate; and, (b) GJB constitutes a "disinterested person" for purposes of section 327(a) of the Bankruptcy Code. Accordingly, the Debtor submits that *nunc pro tunc* retention of GJB is in the best interests of the Debtor, its estate, its creditors, and all other parties-in-interest.

### REQUEST FOR APPROVAL OF RETENTION OF GJB *NUNC PRO TUNC* AS OF MARCH 10, 2014

>	32.	The Debtor requests that GJB's retention be made effective, *nunc pro tunc* as of March 10, 2014, the date of the filing of the Debtor's voluntary bankruptcy petition, in order to allow GJB to be compensated for the work it performs for the Debtor as of and following the

Petition Date and prior to the Court's consideration of this Application. The Debtor submits that under the circumstances, and to avoid irreparable harm to the Debtor's estate that may occur if GJB is not immediately retained, retroactive approval to the Petition Date is warranted. *See, e.g., Matter of Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986); *F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 103 (3d Cir. 1988), cert. denied, 488 U.S. 852 (1988); *Indian River Homes, Inc. v. Sussex Trust Co.*, 108 B.R. 46, 51 (D. Del. 1989) (approval of debtor's employment of attorney and real estate agent as of a prior date was not an abuse of discretion).

### NOTICE

33. Notice of this Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtor's twenty (20) largest unsecured creditors; and (c) those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

### NO PRIOR REQUEST

34. No previous application for the relief sought herein has been made to this or any other court.

Dated: __March 21__, 2014

PROSPECT PARK NETWORKS, LLC
*Debtor and Debtor-in-Possession*

_____
Jeffrey Kwatinetz
President and Chief Executive Officer