IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT PARK NETWORKS, LLC,[1] | Case No. 14-10520 (MFW) |
| Debtor. | Hearing Date: August 25, 2014 at 10:30 a.m. (ET)<br>Objection Deadline: August 18, 2014 at 4:00 p.m. (ET) |

**APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF JONES DAY AS SPECIAL LITIGATION COUNSEL TO DEBTOR PURSUANT TO 11 U.S.C. §§ 327& 328;  (II) AUTHORIZING PAYMENT OF LITIGATION COST RESERVE PURSUANT TO 11 U.S.C. § 363 AND (III) AUTHORIZING WAIVER OF CERTAIN INFORMATION REQUIREMENTS PURSUANT TO LOCAL RULE 2016-2(h)**

The above-captioned debtor and debtor-in-possession (the "**Debtor**") hereby submits this application (the "**Application**") pursuant to sections 327(e) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order: (a) authorizing the retention and employment of Jones Day ("**Jones Day**") as special litigation counsel to the Debtor in connection with the ABC Litigation (defined below) on a contingency fee basis, (b) authorizing the establishment of a Litigation Cost Reserve pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 6004; (c) authorizing the limited waiver of sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, Local Rule 2016-2, the UST's Guidelines (defined below); and (d) providing any additional relief necessary to effectuate the foregoing.

---

[1] The last four digits of the Debtor's federal tax identification number are 8495. The Debtor's headquarters and mailing address is 1840 Century Park East, 18th Floor, Los Angeles, California 90067.

1

The facts and circumstances supporting this Application are set forth herein, in the declaration of Brian A. Sun, Esq. (the "**Sun Declaration**"), made pursuant to section 329 of the Bankruptcy Code and Bankruptcy Rule 2016, attached hereto as **Exhibit A** and incorporated herein by reference. In support of this Application, the Debtor further relies on the *Declaration of Jeffrey Kwatinetz in Support of Debtor's Chapter 11 Petition* (the "**Kwatinetz Declaration**"), previously filed with the Court at Docket No. 17, and the Debtor respectfully states as follows:

### Jurisdiction, Venue, and Statutory Predicates

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief sought herein are sections 327(e), 328(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(b), Local Rule 2014-1, and Local Rule 2016-2.

### Background

A.  **The Chapter 11 Case**

3. On March 10, 2014 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. The Debtor has continued in possession of its assets and is operating and managing its affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request has been made for the appointment of a trustee or examiner in the Chapter 11 Case. On March 31, 2014, the Office of the United States Trustee appointed an

Official Committee of Unsecured Creditors (the "**Committee**") pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 24].

### B. Events Leading to the Chapter 11 Case

6. In April 2011, American Broadcasting Companies ("**ABC**") announced the cancellation of its storied soap operas *One Life to Live* ("**OLTL**") and *All My Children* ("**AMC**"). Seeing an opportunity to launch new episodes of these soap operas as original content for online consumption, the Debtor entered into an exclusive license agreement with ABC for all of the elements of OLTL and AMC – storylines, characters, themes and plots. In the agreement, ABC promised not to do anything to hinder the Debtor's exercise of its rights over the shows.

7. Not long after, the Debtor was compelled to suspend an early launch of the online series, ABC asked to "borrow" certain OLTL characters for use on ABC's remaining soap, *General Hospital* ("**GH**"), in a limited and short-term capacity. ABC promised consultation, script approval, and expressly swore not to do any damage to the "canon" of OLTL. Yet, even before the ink dried on the parties' agreement, ABC began unilaterally changing key storylines and themes, literally killing some OLTL characters and deeply integrating others into the GH landscape, all to create a mega soap of GH behind the Debtor's back. The changes bewildered and alienated longtime OLTL fans. ABC even went so far as to induce the actors who had been playing some of the more popular characters on OLTL to sign secret, exclusive, multi-year contracts with ABC — all without a word to the Debtor.

8. When the Debtor announced in December 2012 that it had raised the tens of millions of dollars necessary to produce new shows, ABC's reaction was swift and punitive. ABC refused to run advertising for the new shows, refused to permit the Debtor access to the

shows' social media and websites, attempted to prevent guest appearances by the OLTL actors on ABC's talk shows, and even interfered with third party agreements. Confronted with losing its entire investment or trying to pick up the pieces and press on, the Debtor eventually produced one new season of OLTL and of AMC. But, the damage could not be undone, nor the fans reclaimed. As a consequence of ABC's fraud and its multiple breaches of both the express terms of the parties' contract and the implied covenant of good faith and fair dealing included in every contract in California, the Debtor has sustained the loss of its investment of over $30 million, as well as the profits that it stood to make had ABC acted as the partner it had held itself out to be.

### C. The ABC Lawsuit

9. On April 18, 2013, the Debtor commenced an action against ABC in the Superior Court of the State of California, County of Los Angeles (the "**LA Court**"), Case No. BC506052, seeking recovery of its damages and other available relief resulting from ABC's actions (the "**ABC Lawsuit**" or the "**ABC Litigation**"). A copy of the Debtor's First Amended Complaint and Demand for Jury Trial in the ABC Lawsuit, dated November 13, 2013, is attached here to as **Exhibit B**.[2]

10. Prior to the Petition Date, the Debtor's interests in the ABC Lawsuit were represented by Andrews Kurth LLP and Lavely & Singer. As of the Petition Date, both Andrews Kurth LLP and Lavely & Singer were creditors of the Debtor due to unpaid fees for their pre-petition representation. Andrews Kurth LLP filed a proof of claim in excess of $700,000; Lavely & Singer filed a proof of claim in excess of $120,000. Immediately following the Petition Date, in the interests of continuity of counsel, the Debtor worked with Andrews Kurth LLP in good faith toward a mutually agreeable structure for post-petition services. Despite these efforts, the

---

[2] Exhibits to the First Amended Complaint have not been annexed to Exhibit B hereto, but will be made available to parties in interest upon request.

parties were unable to reach an agreement for continued representation in the ABC Litigation following the Petition Date.

11.     The LA Court has instituted a "dark period" during which discovery and pleading response deadlines were stayed to allow the Debtor sufficient time to retain new counsel, and for such counsel to become fully apprised of the matters in the ABC Litigation. The ABC Litigation is presently scheduled for another Case Management Conference on August 20, 2014, at which time it is anticipated that the LA Court will terminate the "dark period" and allow the ABC Litigation to proceed expeditiously to trial, which is consistent with the Debtor's objectives.

12.     Accordingly, the Debtor has received and considered expressions of interest from three law firms for representation of the Debtor in the ABC Litigation, including Genovese Joblove & Battista, P.A.; Cole, Schotz, Meisel, Forman & Leonard, P.A.; and Jones Day.

13.     After careful consideration of all three proposals, the Debtor has determined that it is in the best interests of the estate to retain Jones Day as special litigation counsel on a contingency fee basis, as more specifically set forth herein. This decision is based on, among other things, the talent, skill and experience which Jones Day can bring to the ABC Litigation; the willingness of Jones Day to undertake the representation on a contingency fee basis; the extensive diligence performed by Jones Day prior to agreeing to take this representation, including interviews and inquiries with attorneys at the Debtor's pre-petition counsel, Andrews Kurth LLP; and the fact that the attorneys that will be handling the case are in Jones Day's Los Angeles office where the ABC Litigation is pending.

**Relief Requested**

14.     By this Application, the Debtor respectfully requests that this Court enter an order authorizing the employment and retention of Jones Day as its special litigation counsel in

LAI-3220189v5

connection with the ABC Litigation, pursuant to the contingent fee arrangement detailed below (the "**Contingent Fee Arrangement**"). The Debtor believes that the Contingent Fee Arrangement will enable the Debtor to vigorously prosecute its claims in the ABC Lawsuit. Absent the relief requested herein, the Debtor would be left without a viable path to prosecute its causes of action against ABC, to the significant detriment of the Debtor's estate, its creditors and interest holders. The Debtor further seeks authority to pay Jones Day a Litigation Cost Reserve in the amount of $400,000 as more fully set forth herein.

15. All of the terms of Jones Day's engagement, including the Contingent Fee Arrangement, are set forth in the Letter Agreement for Retention to Provide Legal Services (the "**Retainer Agreement**") which is attached hereto as **Exhibit C**. For the avoidance of doubt, the Debtor is seeking approval of the Retainer Agreement in its entirety, including all terms thereof.

16. As part of the Contingent Fee Arrangement detailed below, the Debtor is seeking approval of a contingent fee (the "**Contingent Fee**") for Jones Day in connection with its work on the ABC Lawsuit. The Contingent Fee is structured as follows:

    a. <u>Contingent Fee</u>: Jones Day's work relating to the ABC Lawsuit shall entitle Jones Day to the Contingent Fee.

    b. <u>Fee Structure</u>: The Contingent Fee shall be structured as follows:

        i. Jones Day shall be entitled to fees in the amount of 33 1/3% of all Gross Consideration (as defined in the Retainer Agreement and summarized herein) received should the ABC Lawsuit settle prior to the empanelling of a jury;

        ii. Jones Day shall be entitled to fees in the amount of 40% of any Gross Consideration received after empanelling a jury in the ABC Lawsuit;

        iii. The term "Gross Consideration" is defined in the Retainer Agreement as "any and all monetary and non-monetary payments made to or for the benefit of, value received or obtained by, Prospect Park or its bankruptcy estate by any person or entity for any settlement, business deal, judgment, or any other resolution of this matter, or any portion thereof, including all cash and non-cash consideration, whether received directly or indirectly

        by Prospect Park, before any deductions (including any amount recovered that may be held in escrow, sums received on account of compensatory damages, exemplary or enhanced damages, attorneys' fees, pre-judgment interest, costs and post-judgment interest)."

c. <u>Litigation Costs and Expenses</u>: Jones Day shall be authorized to incur reasonable costs and expenses in performing legal services in connection with its work on the ABC Lawsuit, including (without limitation) photocopying, costs of charts and other visual aids, expert and witness fees, travel expenses, filing and recording fees, postage, express mail and messenger charges, deposition fees and costs, computerized legal research charges and other computer services, electronic discovery costs, costs associated with establishing and maintaining a database of documents, document review costs, and miscellaneous other charges.

d. <u>Litigation Cost Reserve and Administrative Claim.</u> Due to the complex nature of the ABC Lawsuit, and as set forth in the Retainer Agreement, an express condition precedent to Jones Day's undertaking of this representation is the establishment of a cost fund in the amount of $400,000 which shall be earmarked solely and exclusively to pay for costs incurred in connection with Jones Day's representation of the Debtor in the ABC Litigation (the "**Litigation Cost Reserve**"). Jones Day's representation of the Debtor shall not be effective until the Litigation Cost Reserve has been transferred to Jones Day's attorney trust account. To the extent that Jones Day's costs and expenses exceed the Litigation Cost Reserve, Jones Day shall have an administrative expense claim pursuant to section 503 of the Bankruptcy Code for the balance of unpaid costs and expenses, subject to final approval of the application for such costs and expenses.

e. <u>Jones Day's Priority in Payment</u>. As set forth in the Retainer Agreement, it is a condition precedent to Jones Day's undertaking of the representation of the Debtor that no creditor of the Debtor, including (without limitation), the Debtor's prior counsel in the ABC Lawsuit, has or shall have any claim, charge, or lien on the Gross Consideration including, but not limited to, proceeds of the pending lawsuit that is of senior or equal priority to the claim of and/or lien granted to Jones Day against such proceeds for recovery of its fees and costs. In this regard, the Debtor represents that two creditors have filed proofs of claim which assert an interest in the proceeds of the ABC Litigation. First, Lavely & Singer, P.C. has filed Claim 8-1 asserting a claim of $120,596.72 secured by the proceeds of the ABC Litigation. However, Claim 8-1 asserts no basis for the pre-petition perfection of any such secured claim and is therefore deficient on its face. Moreover, the pre-petition engagement agreement between the Debtor and Lavely & Singer, P.C. remains an executory contract which the Debtor intends to reject through its forthcoming plan of liquidation. Second, Andrews Kurth LLP has filed Claim 12-1 in which it asserts that its pre-petition engagement agreement with the Debtor provides a contingency fee of 15% of the value of any recovery in the ABC Litigation. However, Claim 12-1 does not assert a secured claim as to such contingency fee, and specifically states that it asserts an unsecured claim

"for the balance of the Claim" other than a $50,000 retainer which it has not applied and presently holds in its attorney trust account.

## Basis for Relief Requested

17. Pursuant to section 328(a) of the Bankruptcy Code, "[t]he Trustee . . . with the court's approval, may employ a professional person under section 1103 [of the Bankruptcy Code] . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage basis, or on a contingent fee basis." 11 U.S.C. § 328(a); see also *In re Insilco Technologies*, 291 B.R. 628, 633 (Bankr. D. Del. 2003) (noting that section 328(a) applies to all professionals sought to be retained in the administration of a chapter 11 case).

18. As described above, the claims asserted by the Debtor in the ABC Litigation are complex and fact specific, and will require significant time and attention from extremely competent and capable counsel. The Debtor has determined in its reasonable business judgment that unless it is able to retain counsel pursuant to a contingent fee agreement, it will be unable to successfully prosecute the claims it asserted in the ABC Litigation. The Debtor has chosen Jones Day and negotiated the Contingent Fee Arrangement set forth herein so as to ensure that the Debtor can preserve and maximize the value of the ABC Litigation as the most significant asset of this estate.

19. The Debtor believes that Jones Day is well qualified and uniquely suited to represent the estate as contingent fee counsel in the ABC Litigation, and that the Contingent Fee Arrangement is reasonable and appropriate under the circumstances.

20. Section 328(a) of the Bankruptcy Code further provides that the Court may at the conclusion of a representation allow compensation different from the terms and conditions originally agreed upon with the proposed professional, "if such terms and conditions prove to

LAI-3220189v5

have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). Here, the Debtor respectfully submits that the ABC Litigation will involve high risk, may present a number of novel or difficult issues, and that the Contingent Fee Arrangement is within the range of fees customarily charged in similar cases. Moreover, it is not uncommon for matters such as the ABC Litigation to be resolved consensually prior to trial, and therefore such a resolution would be a development capable of being anticipated at this time. Accordingly, the Debtor respectfully requests that the Court pre-approve the Contingent Fee Arrangement on a final basis as proper and provident in light of all circumstances which can reasonably be anticipated at this time, pursuant to section 328(a) of the Bankruptcy Code. *See Riker, Danzig, Scherer, Hyland & Perretti v. Official Committee of Unsecured Creditors (In re Smart World Technologies, LLC)*, 552 F.3d 228, 234 (2nd Cir. 2009) ("[P]re-approval of a fee agreement under 11 U.S.C. § 328(a) depends on the totality of the circumstances, including whether the professional's application, or the court's order, referenced section 328(a), and whether the court evaluated the propriety of the fee arrangement before granting final, and not merely preliminary approval.")

21.     Finally, the Debtor seeks the Court's authority to pay the Litigation Cost Reserve to Jones Day from property of the estate. The Debtor believes that sufficient funds will be available in the estate to pay the Litigation Cost Reserve from (i) the net proceeds of the sale of the Tax Credit (as defined in the Kwatinetz Declaration) and (ii) an agreement by Prospect Park, LLC to allow the Debtor to use $50,000 of the cash upon which Prospect Park, LLC asserts a security interest, which is disputed by the Official Committee of Unsecured Creditors, for payment towards the Litigation Cost Reserve (without prejudice to the rights of Prospect Park, LLC to assert a secured claim in such cash, or any party in interest to dispute such claim). The

LAI-3220189v5

Debtor respectfully submits that the Litigation Cost Reserve is reasonable in light of the substantial expenses which Jones Day will likely incur in prosecuting the ABC Litigation, including in connection with the retention of expert witnesses. Accordingly, the Debtor believes in its business judgment that the proposed use of estate property to fund the Litigation Cost Reserve is a reasonable and proper use of property of the estate and should be approved. Notwithstanding the foregoing, Jones Day shall prepare and file a final application detailing only the costs and expenses incurred by Jones Day in the ABC Litigation and final approval of such costs and expenses shall be subject to a reasonableness finding of this Court.

22. Further, with respect to the foregoing request to use estate cash to fund the Litigation Reserve, the Debtor respectfully requests that the Court waive the 14 day stay imposed by Fed. R. Bankr. 6004(h) and order that such authorization be effective immediately upon entry of the Court's order.

### Request for a Limited Waiver pursuant to Del. Bank. LR 2016-2(h)

23. Jones Day intends to apply to the Court for final allowance of costs and expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of the Court. Jones Day will maintain records for costs and expenses incurred in connection with the rendering of its services in this case. However, as this employment is on a contingency fee basis, Jones Day requests that it be permitted to file only its records for costs and expenses and subject them to final approval of this Court. Accordingly, by this Application, the Debtor is seeking on behalf of Jones Day a waiver pursuant to Local Rule 2016-2(h) of the requirements in Local Rule 2016(d) and a limited waiver of the requirements in Local Rule 2016(c) to the extent they pertain to compensation.

LAI-3220189v5

24. Further, to the extent inconsistent with the relief requested herein, the Debtor requests that the requirements of sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330 (the "UST's Guidelines"), be waived.

### Disclosure Concerning Conflicts of Interest

25. To check and clear potential conflicts of interest in this case, Jones Day researched its client database to determine whether it had any relationships with the Debtor, parties to the ABC Litigation, or any of the parties listed on the "Label Matrix for local noticing" maintained by the Clerk of the Court for this case (the "**Interested Parties**").

26. To the best of the Debtor's knowledge, information and belief, other than in connection with this case, Jones Day has no connection with the Interested Parties, the United States Trustee, or the Debtor's attorneys, except as set forth in the Sun Declaration.

27. Jones Day does not represent, and will not represent, any entity other than the Debtor in matters related to this Chapter 11 case.

28. If Jones Day discovers additional information that requires disclosure, Jones Day will file a supplemental disclosure with the Court as promptly as possible.

29. To the best of the Debtor's knowledge, except as stated in the Sun Declaration attached hereto, (i) Jones Day is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (ii) neither Jones Day nor its professionals have any connection with the Debtor, the creditors, or any other party-in-interest; and (iii) Jones Day does not hold or represent any interest adverse to the Debtor in the matter for which it is to be retained.

LAI-3220189v5

### Notice and No Prior Request

30. Notice of this Motion has been given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel to GEPF, LLC; and (d) those parties requesting notice in this case pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

31. No prior request for the relief sought in this Motion has been made to this or any other Court.

**WHEREFORE** the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit D**: (i) authorizing the Debtor to employ and retain Jones Day as special litigation counsel to the Debtor pursuant to sections 327(e) and 328(a) of the Bankruptcy Code; (ii) authorizing the payment to Jones Day of a Litigation Cost Reserve pursuant to section 363 of the Bankruptcy Code; (iii) authorizing the limited waiver of sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, Local Rule 2016-2, the UST's Guidelines, as set forth herein; (iv) providing any additional relief necessary to effectuate the foregoing; and (iv) granting such other and further relief as is proper.

Dated: August 4, 2014  
       Wilmington, Delaware

**COUSINS CHIPMAN & BROWN, LLP**

_____  
William E. Chipman, Jr. (No. 3818)  
The Nemours Building  
1007 North Orange Street Suite 1110  
Wilmington, Delaware 19801  
Telephone:  (302) 295-0193  
Facsimile:  (302) 295-0199  
Email:  chipman@cbllp.com

-and-

LAI-3220189v5

        **GENOVESE JOBLOVE & BATTISTA, P.A.**
John H. Genovese (Fla. Bar No. 280852)
Heather L. Harmon (Fla. Bar No. 13192)
Michael L. Schuster (Fla. Bar No. 57119)
(Admitted *Pro Hac Vice*)
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Telephone:   (305) 349-2300
Facsimile:     (305) 349-2310)
Email:            JGenovese@Gjb-Law.com
                HHarmon@Gjb-Law.com
                MSchuster@Gjb-Law.com

*Counsel to Debtor and Debtor-In-Possession*