IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT PARK NETWORKS, LLC,[1] | Case No. 14-10520 (MFW) |
| Debtor. | Objection Deadline: August 18, 2014 at 4:00 p.m. (ET)<br>Hearing Date: August 25, 2014 at 10:30 a.m. (ET) |

**DEBTOR'S MOTION FOR AN ORDER (I) AUTHORIZING DEBTOR TO SUBMIT TAX CREDIT APPLICATION TO THE STATE OF CONNECTICUT; (II) APPROVING TAX CREDIT PURCHASE AGREEMENT WITH APPLE, INC.; (III) AUTHORIZING SALE OF TAX CREDIT TO APPLE, INC. VIA PRIVATE SALE PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (IV) AUTHORIZING DEBTOR TO ISSUE NOTICE OF TRANSFER OF TAX CREDIT; AND (V) DIRECTING EP FINANCIAL SOLUTIONS TO PAY NET PROCEEDS TO DEBTOR**

The above-captioned debtor and debtor-in-possession (the "**Debtor**"), by and through the undersigned counsel, hereby submits this motion (the "**Motion**") for an order (i) authorizing debtor to submit tax credit application to State of Connecticut; (ii) approving the Debtor's Tax Credit Purchase Agreement with Apple, Inc. ("**Apple**"); (iii) authorizing the sale of the Tax Credit to Apple under the terms of the Tax Credit Purchase Agreement pursuant to Section 363 of the Bankruptcy Code, free and clear of liens, claims, encumbrances, and interests, or in the alternative, authorizing the assumption of the Tax Credit Agreement; (iv) authorizing the Debtor to issue the Notice of Transfer of Tax Credit; (v) directing EP Financial Solutions (defined below) to remit net proceeds to the Debtor; and (vi) authorizing the Debtor to take related actions with respect to the Tax Credit in connection with such proposed sale. In support of this Motion, the Debtor respectfully represents as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 8495. The Debtor's headquarters and mailing address is 1840 Century Park East, 18th Floor, Los Angeles, California 90067.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief requested herein are section 363 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (as amended or modified, the "**Bankruptcy Code**"), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

3. On March 10, 2014 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing this case (the "**Chapter 11 Case**").

4. The Debtor has continued in possession of its properties and is operating and managing its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request has been made for the appointment of a trustee or examiner in the Chapter 11 Case. On March 31, 2014, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**") pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 24].

6. A more detailed overview of the Debtor and the reasons for the commencement of this Chapter 11 case is set forth in the *Declaration of Jeffrey E. Kwatinetz in Support of Chapter 11 Petition* (the "**Kwatinetz Declaration**") filed on March 21, 2014 [Docket No. 17] and is incorporated herein by reference.

## THE FILM TAX CREDIT PURCHASE AGREEMENT
## AND THE TAX CREDIT LOAN

7. Connecticut legislation provides for eligible multimedia companies to receive a tax credit on qualified production expenses incurred in the state. The Debtor incurred such qualified production expenses in Connecticut in 2013, and is entitled to a tax credit voucher from the State of Connecticut for its production related expenditures within the State of Connecticut (the "**Tax Credit**"). The State of Connecticut currently offers a 30% tax credit to companies with qualified production related expenditures in excess of $1 million. The Debtor had qualified production related expenditures of $19,910,154.00 during 2013 (collectively, the "**Qualified Spends**").

8. Prior to the Petition Date, after incurring approximately $16 million of the Qualified Spends, the Debtor entered into a Loan and Security Agreement dated June 19, 2013 with EP Financial Solutions ("**Loan Agreement**") wherein EP Financial Solutions provided the Debtor with a commitment of $5,007,140, and the Debtor, concurrently and as part of the loan transaction, agreed to sell the Tax Credit to Apple, Inc. and pledged the anticipated proceeds from that sale as collateral to secure the Debtor's indebtedness to EP Financial Solutions.

9. Specifically, the Debtor, as seller, entered into a Film Tax Credit Purchase Agreement with Apple, Inc. on April 1, 2013, and a First Amendment to Tax Credit Purchase Agreement dated June 12, 2013 (together, the "**Tax Credit Purchase Agreement**"). By a Second Amendment to Tax Credit Purchase Agreement, Apple, Inc. has agreed to extend the "Closing Date" under the Tax Credit Purchase Agreement to September 30, 2014. The Tax Credit Purchase Agreement is attached hereto as **Exhibit A**.

10. On June 19, 2013, the Debtor entered into a Tax Credit Loan with EP Financial Solutions, through which the Debtor borrowed $5,007,140.00 from EP Financial Solutions (the "**Tax Credit Loan**"). The Tax Credit Loan is comprised of borrowed funds in the amount of $4,243,308.00, lender fees in the amount of $125,143.00; a one year prepaid interest reserve in the amount of $388,332.00 and a holdback in the amount of $250,357.00.

11. The Tax Credit Loan is evidenced by a Promissory Note and Loan and Security Agreement each dated June 19, 2013. In connection with the Tax Credit Loan, the Debtor granted EP Financial Solutions a security interest in the following collateral:

> 6.1 <u>Grant of Lien</u>. As security for all of the Obligations, the Borrower hereby grants, assigns and pledges to the Lender a continuing, first priority security interest in, Lien on, and right of set-off against, all of the Borrower's right, title and interest in and to the following personal property, whether now owned or hereafter acquired or arising and regardless of where located and whether or not in the possession of the Borrower (collectively referred to herein as the "<u>Collateral</u>"): (a) all right, title and interest in and to, and in connection with, the Tax Credit, the Tax Credit Proceeds and the Tax Credit Purchase Agreement; (b) all accounts, contract rights, general intangibles, negotiable instruments and investment property related to the Tax Credit, the Tax Credit Proceeds or the Tax Credit Purchase Agreement; and (c) all accessions to, substitution for, and replacements, proceeds, and proceeds of proceeds of any of the foregoing, including, without limitation, proceeds of any insurance policies and claims against third Persons.

12. EP Financial Solutions perfected its security interest in connection with the Tax Credit Loan by filing a UCC-1 financing statement with the Delaware Secretary of State on June 20, 2013, bearing Initial Filing # 2013 2371830. EP Financial was also granted a Copyright Mortgage and security interest in "(a) all of Borrower's right, title and interest in, to and under the Tax Credit, the Tax Credit Proceeds and the Tax Credit Purchase Agreement; (b) all accounts, contract rights, general intangibles, negotiable instruments and investment property related to the Tax Credit, the Tax Credit Proceeds and the Tax Credit Purchase Agreement; (c) all accessions to, substitutions for, and replacements, proceeds and proceeds of proceeds of any of the foregoing, including, without limitation, proceeds of any insurance policies, and claims against third Persons, with respect to any of the foregoing."

13. Also in connection with the Tax Credit Loan, the Debtor executed a *Notice Pursuant to UCC Section 9406 of Assignment and Irrevocable Direction to Pay and Account* (the "**UCC 9406 Assignment**") whereby the Debtor irrevocably assigned the purchase price under the Tax Credit Purchase Agreement as security for the Debtor's obligations to EP Financial Solutions. The Debtor also executed a Power of Attorney dated June 19, 2013, pursuant to which it appointed EP Financial as its attorney-in-fact with respect to, among other things, the Tax Credit Loan, repayment thereof and execution upon the Collateral (as described therein). The Debtor further executed *a Film Production Incentive Administration Agreement* with EP Financial Solutions.

14. The principal terms of the Tax Credit Purchase Agreement are as follows:

- Purchase Price: The purchase price of the Tax Credit shall be $0.89 for each dollar of the Tax Credit to be transferred to Apple, Inc. (the "**Purchase Price**").

- Transfer: The transfer of the Tax Credit shall take place on or before September 30, 2014, or such further date to be agreed upon by the Debtor, EP Financial Solutions and Apple.

- Payment: Apple, Inc. shall pay the Tax Credit Purchase Price to EP Financial Solutions no later than 5 business days after the Debtor's transfer of the Tax Credit to Apple, Inc. as required by the Tax Credit Purchase Agreement.

- Warranties and Representations: The Tax Credit Purchase Agreement provides certain warranties and representations by the Debtor regarding the Tax Credit, including that the Debtor has good, exclusive and

marketable title to the Tax Credit, and that the Tax Credit has been duly earned.

- <u>Transaction Taxes</u>: Each party to the Tax Credit Purchase Agreement shall pay and be solely responsible for taxes imposed on such party arising from the transfer of the Tax Credits to Apple, Inc.

- <u>Indemnification</u>: The Debtor shall indemnify Apple, Inc. from claims and liabilities related to (among other things) (i) any recapture, disallowance, reduction, decertification, or other failure or defect attributable to the Tax Credit as a result of the Debtor's material representation or fraud or (ii) the validity, value, ownership, state of title, existence of encumbrances, transferability or use of the Tax Credit due to the Debtor's fault.

- <u>Confidentiality</u>: Neither party to the Tax Credit Purchase Agreement may release Confidential Information (as defined therein) except as permitted by or necessary to comply with the Tax Credit Purchase Agreement.

**CHRONOLOGY AND PROCEDURES RELATED TO THE TAX CREDIT**

15. The Debtor proposes to consummate the Tax Credit transactions pursuant to the following chronology[2] and procedures as set forth in the Tax Credit Purchase Agreement and under applicable Connecticut law:

- Submit the Tax Credit Application to State of Connecticut Office of Film, Television & Digital Media, including the $5,000.00 filing fee from unencumbered cash in the Debtors estate. The Tax Credit Application will provide for Qualified Spends in the amount of $19,910.154.00;

---

[2] The Debtor estimates that the entire process outlined below may take between 90-120 days.

- The State of Connecticut - Office of Film, Television & Digital Media reviews the Application and the audit and requested information attached thereto;

- Assuming that the State of Connecticut accepts the Application and all of the Debtor's proposed Qualified Spends, the State of Connecticut will then issue a Tax Credit Voucher in the Debtor's name and mail such voucher to the Debtor. Based on Qualified Spends of $19,910,154 and a rebate percentage of 30%, the Debtor estimates that the gross amount of the Tax Credit will equal $5,973,046 (the "**Gross Tax Credit**");

- EP Financial Solutions prepares, for the Debtor's approval, and submits, pursuant to the Tax Credit Purchase Agreement, certain tax credit transfer documents to the State of Connecticut (collectively, the "**Transfer Documents**");

- The State of Connecticut reviews the Transfer Documents and, if accepted, then issues a new Tax Credit Voucher in the name of the transferee. Pursuant to the Tax Credit Purchase Agreement, the Debtor's transferee is Apple;

- Once the newly issued Tax Credit is received by Apple, pursuant to the Tax Credit Purchase Agreement and the UCC 9406 Assignment, Apple then will pay, within 5 days, the Tax Credit Purchase Price of $0.89 of the Gross Tax Credit to EP Financial Solutions. The Debtor estimates that the Tax Credit Purchase Price will be $5,316,011;

- Once EP Financial Solutions receives the Tax Credit Purchase Price, EP Financial Solutions then remits the balance remaining after payment to EP Financial Solutions of all amounts due under the Tax Credit Loan Agreement (the "**Net Proceeds**") to the

Debtor. A chart outlining the Debtor's calculations[3] of the estimated Net Proceeds is attached hereto as **Exhibit B**.

- Once the Net Proceeds are deposited in the Debtor's debtor-in-possession account, the Debtor shall only distribute the Net Proceeds in accordance with applicable bankruptcy law and any orders issued by this Court.

**RELIEF REQUESTED**

16. By this Motion, the Debtor seeks an order authorizing it to consummate the Tax Credit Purchase Agreement by executing any and all documents necessary to obtain the Tax Credit, including the submission of a final application for the Tax Credit to the State of Connecticut, including payment of the $5,000.00 application fee from unencumbered cash in the Debtor's estate, and for authority to complete the sale of the Tax Credit to Apple, Inc. pursuant to the Tax Credit Purchase Agreement by transferring the Tax Credit to Apple, Inc. free and clear of liens, claims, interests and encumbrances, with all such liens, claims interests and encumbrances to attach to the proceeds of the sale. Further, the Debtor seeks an Order directing EP Financial Solutions to pay the Net Proceeds to the Debtor. The Debtor seeks this relief pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rules 2002-1 and 6004-1. By this Motion, the Debtor also seeks the Court's approval of the Tax Credit Purchase Agreement.

17. In addition to the above-described salient features of the Tax Credit Purchase Agreement, in accordance with Local Rule 6004-1(b)(iv), the Debtor notes the following with respect to the Tax Credit Purchase Agreement:

---

[3] This chart is an approximation. EP Financial Solutions' interest and attorneys' fees will continue to accrue and reserve all rights to assert additional interest and fees, including default interest. The Debtor reserves all rights under 11 U.S.C. 506(b) to object to the reasonableness of any interest or fees.

i. **No Sale to an Insider**: Apple, Inc. is not an insider of the Debtor as such term is defined in section 101(31) of the Bankruptcy Code.

ii. **Agreements with Management**: The Debtor is not aware of any agreements to disclose pursuant to Local Rule 6004-1(b)(iv)(B).

iii. **Releases**: The Debtor is not aware of any releases to disclose pursuant to Local Rule 6004-1(b)(iv)(C).

iv. **Private Sale/No Competitive Bidding**: The Debtor does not intend to conduct an auction for the sale of the Tax Credit. The Debtor believes that that the purchase price specified in the Tax Credit Purchase Agreement is reasonable and that consummation of the Tax Credit Purchase Agreement via private sale is in the best interests of the estate.

v. **Closing and Other Deadlines**: By a Second Amended to Tax Credit Purchase Agreement, Apple, Inc. has agreed to extend the "Closing Date" under the Tax Credit Purchase Agreement to September 30, 2014 or such further date to be agreed upon by the Debtor, EP Financial Solutions and Apple.

vi. **Good Faith Deposit**: No deposit has been paid under the Tax Credit Purchase Agreement.

vii. **Interim Arrangements with Purchaser**: The Debtor is not aware of any interim arrangements with Apple, Inc. to be disclosed under Local Rule 6004-1(b)(iv)(G).

viii. **Use of Proceeds**: The Debtor seeks authority to finalize the transaction pursuant to the UCC 9406 Assignment, whereupon EP Financial Solutions

shall transfer the Net Proceeds to the Debtor to be held in the Debtor's DIP account.

ix. **Tax Exemption**: The Debtor is not aware of any provision of the Tax Credit Purchase Agreement which provides that the sale of the Tax Credit shall be exempt from taxes under section 1146(a) of the Bankruptcy Code.

x. **Record Retention**: The Debtor is not selling substantially all of its assets under the Tax Credit Purchase Agreement.

xi. **Sale of Avoidance Actions**: The Tax Credit Purchase Agreement does not involve the sale of, or impose limitations on, any avoidance actions under chapter 5 of the Bankruptcy Code.

xii. **Sale Free and Clear of Unexpired Leases**: The Tax Credit is not subject to any leasehold interests, licenses, or similar rights.

xiii. **Credit Bid**: The Debtor proposes a private sale pursuant to the Tax Credit Purchase Agreement and accordingly the Tax Credit Purchase Agreement does not contain any provisions pertaining to credit bidding.

xiv. **Relief from Bankruptcy Rules 6004(h) and 6006(d)**: The Debtor is requesting relief from the 14-day stay imposed by Bankruptcy Rule 6004(h).

## BASIS FOR RELIEF

18. Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or Lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

19.     The sale of a debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code where the transaction represents an exercise of the debtor's sound business judgment. See, e.g., In re Martin (Myers v. Martin), 91 F.3d 389, 395 (3rd Cir. 1996); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991).

20.     Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. See, e.g., Delaware & Hudson Ry., 124 B.R. at 176; In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (D. Del. 1987).

21.     In the instant case, and as otherwise set forth herein, the Debtor submits that: (i) adequate justification exists for the approval of the Tax Credit Purchase Agreement; (ii) the Tax Credit Purchase Agreement was negotiated at arm's length and in good faith and as part of the Loan Agreement; (iii) the Tax Credit Purchase Price represents a fair and reasonable price for the Tax Credit; and (iv) adequate and reasonable notice will be provided to the relevant parties.

### SALE FREE AND CLEAR OF ALL CLAIMS AND INTERESTS

22.     The Debtor requests that the Tax Credit be sold free and clear of any and all liens, claims, encumbrances and interests. Section 363(f) of the Bankruptcy code permits a debtor in possession to sell property "free and clear of any interest in such property of an entity other than the estate" if (among other things) such entity consents or, if such interest is a lien and the sale price exceeds the aggregate value of all liens on such property. 11 U.S.C. § 363(f)(2) and (3).

23. The Debtor believes that the proceeds of the sale of the Tax Credit to Apple, Inc. will exceed the indebtedness owed by the Debtor to EP Financial Solutions, and as a result, that EP Financial Solutions is an oversecured creditor. As set forth on Exhibit B, the Debtor's pre-petition auditors, CohnReznick, have indicated that the amount of the Debtor's Qualified Spends in Connecticut are $19,910,154, which would translate to a Tax Credit in the amount of $5,973,046.20 (i.e., 30% of the qualified spend), and proceeds from consummation of the Tax Credit Purchase Agreement of $5,316,011.12 (i.e., 89% of the Tax Credit). As of the Petition Date, this amount exceeded the $5,007,140 Tax Credit Loan by $308,871.12 plus return of the Holdback in the amount of $250,357.00, less any additional fees and costs of EP Financial Solutions permissible under the Tax Credit Purchase Agreement.

24. Additionally, the Court can approve the sale of the Tax Credit free and clear of EP Financial Solutions' security interest therein to the extent that EP Financial Solutions consents thereto and its lien attaches to the proceeds

### AUCTION OF THE TAX CREDIT IS NOT REQUIRED

25. Bankruptcy Rule 6004(f)(1) permits private sales or sales conducted without an auction. Fed. R. Bankr. P. 600(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction.") Further, courts have generally held that a debtor has broad discretion in determining the manner in which assets are sold. Berg v. Scanlon (In re Alisa P'ship), 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of sale is within the discretion of the trustee . . . ."); In re Bakalis, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (noting that a trustee has "ample discretion to administer the estate, including authority to conduct public or private sales of estate property.") (citing In re WPRV-TV Inc., 143 B.R. 315, 319 (D.P.R. 1991)). As long as a debtor maximizes the return to its estate, a court should defer to a debtor's

business judgment regarding how to structure an asset sale. <u>Bakalis,</u> 220 B.R. at 532 (recognizing that although a trustee's business judgment enjoys great judicial deference, a duty is imposed on the trustee to maximize the value obtained from a sale); <u>In re NEPSCO, Inc.,</u> 36 B.R. at 25, 26 (Bankr. D. Me. 1983) ("Clearly, the thrust of the[e] statutory scheme [governing 363 sales] is to provide maximum flexibility to the trustee, subject to the oversight of those for whose benefit he acts, <i>i.e.</i>, the creditors of the estate."). Accordingly, if the Debtor concludes that conducting a private sale, as opposed to a public auction, is in the best interests of its estate, the Debtor should be permitted to do so.

26.     The Debtor's decision to pursue a sale of the Tax Credit without an action is supported by the nature of the sale, the existence of the EP Financial Solutions Loan which contemplates the sale of the Tax Credit pursuant to the Tax Credit Purchase Agreement, and the Debtor's belief that the Tax Credit Purchase Price is fair and reasonable, and that a marketing and auction process would increase administrative expenses while exposing the estate to the unnecessary accrual of interest under the EP Financial Solutions Loan, without a sufficient likelihood of any net benefit to the estate and the possibility of harm to the estate. The Debtor therefore submits that its decision to sell the Tax Credit to Apple, Inc. pursuant to the Tax Credit Purchase Agreement is supported by the Debtor's business judgment and should be approved.

## THE PURCHASER IS ENTITLED TO GOOD FAITH PROTECTIONS

27.     Apple, Inc. is purchasing the Tax Credit in good faith and is entitled to the full protections of section 363(m) of the Bankruptcy Code. Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from the debtor, notwithstanding that the sale conducted under section 363(b) is later reversed or modified on appeal.

28.    Section 363(m) fosters "the policy of not only affording finality to the judgment of the bankruptcy court, but . . . give[s] finality to those orders and judgments upon which third parties rely." In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 147 (3rd Cir. 1986) (quoting Hoese Corp. v. Vetter Corp. (In re Vetter Corp.), 724 F.2d 52, 55 (7th Cir. 1983)); see Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (S.D.N.Y. 1994) (Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal."); In re Stein & Day, Inc., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m) good faith purchasers are protected from the reversal of sale on appeal unless there is a stay pending appeal").

29.    The Debtor requests a finding that Apple, Inc. is a good faith purchaser entitled to the protections of sections 363(m) of the Bankruptcy Code. The terms and conditions of the Tax Credit Purchase Agreement have been negotiated by the Debtor and Apple, Inc. at arm's length and in good faith. Apple, Inc. is not an insider of the Debtor. Apple, Inc. is a sophisticated enterprise, and the Debtor believes that Apple, Inc. has not engaged in any conduct that would indicate or constitute a lack of good faith. Accordingly, the Debtor believes that Apple, Inc. is entitled to the protections that section 363(m) of the Bankruptcy Cod provides to a good faith purchaser.

**REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(h)**

30.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

31. The Debtor requests that any order approving the sale of the Tax Credit be effective immediate upon entry of such order by providing that the fourteen-day stay shall not apply. Absent the immediate effectiveness of such order, the Debtor may be hindered from successfully consummating the sale of the Tax Credit as contemplated by the Tax Credit Purchase Agreement. Accordingly, the Debtor believes that it is appropriate that any order approving the Tax Credit Purchase Agreement and authorizing the sale of the Tax Credit to Apple, Inc. be effective without any delay by providing that the fourteen-day stay under Bankruptcy Rule 6004(h) be waived.

## NOTICE AND NO PRIOR REQUEST

32. The Debtor proposes to serve this Motion to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; and (iii) all known creditors, equity interest holders and parties in interest.

33. No previous motion for relief sought herein has been made to this or any other court.

WHEREFORE the Debtor respectfully requests the entry of an order substantially in the form attached hereto: (i) granting this Motion; (ii) authorizing Debtor to submit tax credit application to State of Connecticut; (iii) approving the Debtor's Tax Credit Purchase Agreement with Apple; (iv) authorizing the sale of the Tax Credit to Apple under the terms of the Tax Credit Purchase Agreement described herein, pursuant to Section 363 of the Bankruptcy Code, free and clear of liens, claims, encumbrances, and interests with EP Financial Solutions' lien to attach to the proceeds; (v) authorizing the Debtor to issue the Transfer Documents related to the Tax Credit; (vi) directing EP Financial Solutions to remit Net Proceeds to the Debtor; (vii) authorizing the Debtor to take related actions with respect to the Tax Credit in connection with

such proposed sale, including but not limited to payment of the $5,000.00 application fee; and (viii) granting such other and further relief as is proper.

Dated: August 4, 2014
      Wilmington, Delaware

**COUSINS CHIPMAN & BROWN, LLP**

/s/ Mark D. Olivere
―――――――――――――――――――
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
1007 North Orange Street, Suite 1110
Wilmington, Delaware 19801
Telephone:   (302) 295-0191
Facsimile:   (302) 295-0199
Email:   chipman@ccbllp.com
          olivere@ccbllp.com

-and-

John H. Genovese
Michael Schuster
Heather L. Harmon
**GENOVESE JOBLOVE & BATTISTA P.A.**
100 Southeast Second Street, 44th Floor
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
Email:   jgenovese@gjb-law.com
        mschuster@gjb-law.com
        hharmon@gjb-law.com

*Counsel for the Debtor and Debtor-in-Possession*