## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| PROSPECT PARK NETWORKS, LLC, | Case No. 14-10520 (MFW) |
| Debtor. | |

## LIQUIDATING PLAN OF PROSPECT PARK NETWORKS, LLC
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### DATED:  AUGUST 7, 2014

**GENOVESE JOBLOVE & BATTISTA, P.A.**

John H. Genovese (Fla. Bar No. 80852)
Heather L. Harmon (Fla. Bar No. 013192)
Michael L. Schuster (Fla. Bar No. 57119)
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Telephone:      (305) 349-2300
Facsimile:      (305) 349-2310)
Email:           jgenovese@gjb-law.com
                 hharmon@gjb-law.com
                 mschuster@gjb-law.com

*Co-Counsel to Debtor and*
*Debtor-In-Possession*

**COUSINS CHIPMAN & BROWN, LLP**

William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
1007 North Orange Street, Suite 1110
Wilmington, Delaware  19801
Telephone:      (302) 295-0191
Facsimile:      (302) 295-0199
Email:           chipman@cbllp.com
                 olivere@ccbllp.com

*Co-Counsel to Debtor and*
*Debtor-In-Possession*

## TABLE OF CONTENTS

I. DEFINITIONS AND RULES OF CONSTRUCTION ....................................................2

    A.     Definitions..................................................................................................2

    B.     Rules of Construction. ...............................................................................9

II. DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND INTERESTS................10

    A.     Summary and Classification of Claims and Equity Interests.........................10

    B.     Allowance and Treatment of Unclassified Claims  (Administrative Claims and Priority Tax Claims). ...............................................................................11

          1.     Administrative Claims. ..................................................................11

          2.     Priority Tax Claims........................................................................13

    C.     Classification and Treatment of Classified Claims and Interests. ...................13

          1.     Class 1 (Secured Claim of GEPF, LLC)..........................................13

          2.     Class 2 (Secured Claim of Prospect Park, LLC)...............................13

          3.     Class 3 (Priority Claims other than Priority Tax Claims)...................14

          4.     Class 4 (General Unsecured Claims). ...............................................14

          5.     Class 5 (Equity Interests). ..............................................................14

III. MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN.......................14

    A.     Funding of the Plan...................................................................................14

    B.     The Liquidating Estate. .............................................................................15

          1.     Continuation of the Estate...............................................................15

          2.     Preservation/Vesting of Rights of Action. ........................................15

          3.     Appointment of Steering Committee ................................................15

          4.     Appointment of the Liquidating Trustee...........................................16

          5.     Powers and Duties of the Liquidating Trustee...................................17

          6.     Termination of the Liquidating Estate. .............................................17

          7.     Additional Provisions Regarding the Liquidating Estate.....................18

          8.     Negotiation and Approval of Liquidating Estate Agreement. ..............18

C.     Avoidance Actions and Claims Objections. .................................................18

D.     Distribution of Property Under the Plan. ................................................18

     1.     Manner of Cash Payments Under the Plan. ................................18

     2.     No *De Minimis* Distributions. ...................................................19

     3.     No Distribution with Respect to Disputed Claims.............................19

     4.     Delivery of Distributions and Undeliverable/Unclaimed Distributions. ...........19

E.     Dissolution of Debtor Entities/Termination of Officers and Directors. ..............................20

IV. EXECUTORY CONTRACTS AND UNEXPIRED LEASES .........................................21

V. EFFECT OF CONFIRMATION OF THE PLAN .........................................................21

A.     Binding Effect of Plan/Non-Discharge of the Debtor.....................................21

B.     Exculpation and Limitation of Liability. ..................................................21

C.     Injunctive Relief Relating To Releases.....................................................22

D.     Terms of Existing Injunctions or Stays.....................................................22

VI. OTHER PLAN PROVISIONS ....................................................................................22

A.     The Effective Date. ............................................................................22

B.     Stay of Confirmation Order Shortened. ...................................................23

C.     Revocation of Plan/No Admissions..........................................................23

D.     Exemption from Certain Transfer Taxes. ..................................................23

E.     Modifications of Plan..........................................................................24

F.     Cram-Down.....................................................................................24

G.     Post-Effective Date Effect of Evidences of Claims or Equity Interests. ..................24

H.     Post-Effective Date Notices. .................................................................24

I.     Successors and Assigns.........................................................................24

J.     Saturday, Sunday or Legal Holiday. ........................................................24

K.     Headings. ........................................................................................24

L.     Severability of Plan Provisions. ..............................................................24

M.    Governing Law. ...................................................................................................25

N.    Retention of Jurisdiction. ....................................................................................25

O.    Plan Embodies Settlement. ..................................................................................26

P.    Term of Bankruptcy Injunctions or Stays. ..........................................................26

Q.    Objections to Confirmation...................................................................................26

R.    Notices. .................................................................................................................27

VII. RECOMMENDATION AND CONCLUSION ...............................................................27

Prospect Park Networks, LLC, a Delaware limited liability company (the "**Debtor**"), the debtor and debtor-in-possession in the above-captioned chapter 11 case hereby proposes the following Chapter 11 plan for the Debtor pursuant to section 1121(c) of title 11 of the United States Code.

**I.**

**DEFINITIONS AND RULES OF CONSTRUCTION**

**A.    Definitions.**

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

"**ABC Litigation**" means that certain civil action pending in the Superior Court of the State of California, County of Los Angeles, and styled *Prospect Park Networks, LLC v. American Broadcasting Companies, Inc.*, Case No. BC506052.

"**ABC Litigation Resolution Date**" means the date on which the ABC Litigation is resolved on a final non-appealable basis, whether by judgment, agreement, or otherwise.

"**Administrative Claim**" means a Claim for costs and expenses of administration under section 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate; (b) the value of any goods received by a Debtor within 20 days before the Petition Date to the extent that goods were sold to the Debtor in the ordinary course of the Debtor's business; (c) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code; (d) all fees and charges assessed against the Estate under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; and (f) any Allowed Tax Claims incurred by the Debtor after the Petition Date or relating to a tax year or period which occurs after the Petition Date.

"**Administrative Claims Bar Date**" means the applicable last date set by the Bankruptcy Court pursuant to an Administrative Claims Bar Date Order for a Claimant (other than Professionals) to file a request for payment of any Administrative Claim.

"**Administrative Claims Bar Date Order**" means any order which may be entered by the Bankruptcy Court setting any Administrative Claims Bar Date.

"**Administrative/Priority Reserve Account**" means a subaccount to be established and administered by the Liquidating Debtor containing funds deposited from the Debtor's Cash on hand on the Effective Date in an amount equal to the aggregate amount of asserted and unpaid Administrative Claims (other than Professional Fee Claims) and Priority Claims incurred on or before the Effective Date whether or not subject to dispute, but other than Administrative Claims and Priority Claims that are disallowed on or before the Effective Date pursuant to a Final Order of the Bankruptcy Court. The Administrative/Priority Reserve Account may be an existing account of the Debtor.

"**Allowed**" means, with respect to any Claim or Equity Interest, except as otherwise provided herein: (a) a Claim or Equity Interest that has been scheduled by the Debtor in its Schedules as other than disputed, contingent or unliquidated and as to which the Debtor or other party in interest have not

2

Filed an objection on or before the 180th day after the Effective Date; (b) a Claim that is set forth in a timely Filed Proof of Claim as to which no objection has been Filed and which is not otherwise a Disputed Claim; (c) a Claim or Equity Interest that has been allowed by a Final Order; (d) a Claim or Equity Interest that is allowed: (i) in any stipulation in the amount and nature of Claim or Equity Interest executed by the Debtor prior to the Effective Date and approved by the Bankruptcy Court, (ii) in any stipulation in the amount and nature of Claim or Equity Interest executed by the Liquidating Trustee on or after the Effective Date, (iii) in any contract, instrument, indenture or other agreement entered into or assumed by Debtor in connection with and in accordance with the Plan; or (e) a Claim or Equity Interest that is Allowed pursuant to the terms of this Plan.

**"Allowed Claim"** means a Claim that has been Allowed.

**"Allowed Equity Interest"** means an Equity Interest that has been Allowed.

**"Assets"** mean any and all real property or personal property assets, rights or interests of the Debtor, whether tangible or intangible, and any proceeds realized therefrom, including without limitation, all Cash of the Debtor, all Litigation, and any Litigation Proceeds.

**"Avoidance Actions"** mean all claims and causes of action that the Debtor has or had the power to assert pursuant to any or all of sections 510, 544, 545, 547, 548, 549, 550 and 551 of the Bankruptcy Code, under any similar or related law, or under fraudulent transfer or preference laws.

**"Ballots"** mean the ballots upon which Holders of Impaired Equity Interests shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions

**"Ballot Deadline"** means the deadline established by the Bankruptcy Court for the delivery of executed Ballots to the Ballot Tabulator.

**"Bankruptcy Code"** or **"Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable in the Case.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the District of Delaware, or any other court that properly exercises jurisdiction over the Case.

**"Bankruptcy Rules"** means, together, (a) the Federal Rules of Bankruptcy Procedure and (b) the Local Rules of the Bankruptcy Court, as applicable in these Cases.

**"Bar Date"** means the last day for holders of Claims other than Administrative Claims, to file a proof of claim.

**"Bar Date Order"** means that certain any Order of the Bankruptcy Court setting a Bar Date.

**"Business Day"** means a day that is not a Saturday, Sunday, or legal holiday.

**"Case"** or **"Chapter 11 Case"** means the Debtor's case under chapter 11 of the Bankruptcy Code.

**"Cash"** means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and legal tender of the United States of America or instrumentalities thereof.

**"Claim"** means a claim (as defined in section 101(5) of the Bankruptcy Code) against Debtor, including, but not limited to: (a) any right to payment from Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**"Claimant"** means the Holder of a Claim.

**"Claim Objection"** means any right to object to, obtain the disallowance of, or obtain the subordination of a Claim pursuant to the Bankruptcy Code or applicable law.

**"Claim Objection Deadline"** means, unless extended by Order of the Court for good cause, the later of: (a) 90 days after the Effective Date, and (b) 90 days after the date on which the subject proof of Claim was Filed.

**"Class"** means a group of Claims or Equity Interests as classified in Section II.A.

**"Collateral"** means property, or an interest in property, of the Estate that is encumbered by a Lien to secure payment or performance of a Claim.

**"Confirmation Date"** means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**"Confirmation Hearing"** means the hearing by the Bankruptcy Court held pursuant to Bankruptcy Code section 1128(a) regarding confirmation of the Plan.

**"Confirmation Order"** means the Bankruptcy Court order under Bankruptcy Code section 1129 confirming the Plan.

**"Distributable Assets"** means any Cash remaining for distribution by the Liquidating Estate for Holders of Allowed Equity Interests, including any Net Litigation Proceeds, after deduction for the costs of administering the Liquidating Estate, and satisfying any other unpaid obligations due under the Plan (including, without limitation, any rights of payment owing to the Holders of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Tax Claims, Allowed Other Secured Claims, Allowed Priority Claims (Other than Allowed Priority Tax Claims), Allowed Professional Fee Claims and Allowed General Unsecured Claims).

**"Creditor"** means any Holder of a Claim against Debtor that arose on or prior to the Petition Date.

**"Debtor"** means Prospect Park Networks, LLC, a Delaware Limited Liability Company.

**"Debtor's Counsel"** means (i) Genovese Joblove & Battista, P.A., 100 SE 2nd Street, Suite 4400, Miami, Florida, 33131; and (ii) Cousins Chipman & Brown, LLP, 1007 North Orange Street, Suite 1110, Wilmington, Delaware, 19801.

**"Disallowed Claim"** means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order or by other agreement of a Claimant; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law.

**"Disallowed Equity Interest"** means an Equity Interest, or any portion thereof, that has been disallowed by a Final Order or by other agreement of an Equity Interest holder.

**"Disbursing Agent"** means the Liquidating Trustee or any entity employed or retained by the Liquidating Trustee to serve as disbursing agent under the Plan.

**"Disclosure Statement"** means that certain *Disclosure Statement Describing the Liquidating Plan of Prospect Park Networks, LLC Under Chapter 11 of the Bankruptcy Code (Dated: August 7, 2014)*, as it may be subsequently amended or modified, Filed in connection with the Plan.

**"Disputed"** means, with respect to any Claim or Equity Interest, any Claim or Equity Interest: (a) listed on the Schedules as unliquidated, disputed or contingent; (b) as to which Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or (c) unless otherwise indicated in the Plan, a Claim as to which the period within which to object to such Claim has not yet expired.

**"Disputed Claim"** means: (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of the Effective Date or any later deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim scheduled by the Debtor in the Schedules as disputed, contingent or unliquidated; (iii) a Proof of Claim Filed in a greater amount, or of a different nature or priority, than the amount, nature, or priority listed for that Claim in the Schedules; or (iv) a Claim that is not listed in the Schedules.

**"Distribution Date"** means the date occurring on or as soon as reasonably practicable after the ABC Litigation Resolution Date on which the Disbursing Agent first makes distributions to holders of Allowed Claims and Allowed Equity Interests under the Plan, which shall be no later than one hundred eighty (180) days following the ABC Litigation Resolution Date.

**"Effective Date"** means the first Business Day following the Confirmation Date, on which the conditions set forth in Section VII.A are satisfied.

**"Entity"** means an entity as defined in section 101(15) of the Bankruptcy Code.

"**Equity Interest**" means any equity interest in any Debtor, including, but not limited to, all issued, unissued, authorized or outstanding shares or stock and any limited liability company membership interests, together with any warrants, options or contract rights to purchase or acquire such interests at any time.

"**Estate**" means the estate of the Debtor in this Chapter 11 Case created pursuant to section 541 of the Bankruptcy Code upon the commencement of this Chapter 11 Case.

"**Estate Cash**" means the cash in the Estate on and after the Effective Date.

"**File**", "**Filed**", or "**Filing**" means duly and properly filed with the Bankruptcy Court and reflected on the Bankruptcy Court's official docket.

"**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022.

"**Final Distribution Date**" means the date of the last payment to Holders of Allowed Claims and Allowed Equity Interests in accordance with the provisions of this Plan.

"**Final Order**" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) which has not been reversed, stayed, modified or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no timely appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

"**General Unsecured Claim**" means a Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim or a Secured Claim.

"**Governmental Unit**" has the meaning specified in Bankruptcy Code section 101(27).

"**Holder**" means an Entity holding a Claim or Equity Interest.

"**Impaired**" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Insider**" means an insider of any Debtor, as defined in section 101(31) of the Bankruptcy Code.

"**License Agreements**" mean all licenses, format rights, and other intellectual property set forth in that certain License Agreement dated July 8, 2011 between American Broadcasting Companies, Inc. and the Debtor.

"**Lien**" means a lien, as defined in Bankruptcy Code section 101(37), except a lien that has been avoided in accordance with Bankruptcy Code sections 544, 545, 546, 547, 548, or 549 or is otherwise invalid under the Bankruptcy Code or applicable state law.

"**Liquidating Estate**" means the Debtor's Estate on and after the Effective Date.

**"Liquidating Estate Agreement"** means that certain *Liquidating Estate Agreement* among the Debtor and the Liquidating Trustee setting forth the terms and conditions of the Liquidating Trustee's retention by the Liquidating Estate.  As otherwise set forth herein, the Liquidating Estate Agreement will be negotiated and agreed upon by the Debtor and the Liquidating Trustee, in consultation with the Official Committee of Unsecured Creditors, and proposed to the Court for approval prior to the Confirmation Hearing.

**"Liquidating Trustee"** means James S. Feltman of Mesirow Financial Consulting, LLC, appointed pursuant to the Confirmation Order to administer the Liquidating Estate, or such other person determined as a replacement Liquidating Trustee in accordance with the Plan or the Liquidating Estate Agreement.  The Liquidating Trustee shall serve as the Disbursing Agent under this Plan.

**"Net Litigation Proceeds"** means the cash proceeds realized by the Liquidating Trustee on any and all Retained Actions, after deduction for the costs of realizing such proceeds and administering the Liquidating Estate.

**"Petition Date"** means March 10, 2014 the date on which the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

**"Plan"** means this Plan of Liquidation, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Plan, the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, any exhibits and schedules hereto, either in its present form or as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions hereof.

 **"Priority Claim"** means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

**"Priority Tax Claim"** means a Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**"Pro Rata"** means proportionately so that, with respect to a Claim or Equity Interest, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim or Equity Interest to (ii) the Allowed amount of the Claim or Equity Interest, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims or Allowed Equity Interest in the Class or Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims or Allowed Equity Interests in such Class or Classes.

**"Professional"** means an Entity: (a) employed pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**"Professional Fees Reserve Account"** means an account to be established and administered by the Liquidating Estate for the payment of certain Professional Fees and expenses which account shall be free and of liens, claims, interests and/or encumbrances other than the Professional Fee Claims. The Professional Fees Reserve Account may be an existing account of the Debtor.

**"Professional Fee Claim"** means those fees and expenses claimed by Professionals pursuant to sections 330, 331 and/or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

**"Proof of Claim"** means a proof of claim Filed pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

**"Rejection Damage Claim"** means a claim arising under Bankruptcy Code section 365 from the rejection by the Debtor of an unexpired lease or executory contract.

**"Retained Actions"** means all claims, causes of action and other rights preserved and revested under the Plan pursuant to Section IV.B.2 of the Plan, including (without limitation) all claims of the Debtor in the ABC Litigation.

**"Schedules"** means the Schedules of Assets and Liabilities Filed by the Debtor on or about April 18, 2014, as they may be further amended subsequently.

**"Secured Claim"** means any Claim that is secured in whole or part, as of the Petition Date, by a Lien that is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

**"Secured Tax Claim"** means the Secured Claim of a Governmental Unit for unpaid taxes arising before the Petition Date.

**"Tax"** means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

**"Tax Claim"** means all or that portion of an Allowed Claim held by a Governmental Unit for a tax assessed or assessable against the Debtor, including income and employment taxes and any related penalties or interest.

**"Tax Credit Loan"** means the loan from GEPF, LLC to the Debtor, through which the Debtor borrowed $5,007,140.00 from GEPF. The Tax Credit Loan is comprised of borrowed funds in the amount of $4,243,308.00, lender fees in the amount of $125,143.00; a one year prepaid interest reserve in the amount of $388,332.00 and a holdback in the amount of $250,357.00. The Tax Credit Loan is evidenced by a Promissory Note and Loan and Security Agreement each dated June 19, 2013. In connection with the Tax Credit Loan, the Debtor granted GEPF a security interest in the following collateral:

6.1    Grant of Lien.  As security for all of the Obligations, the Borrower hereby grants, assigns and pledges to the Lender a continuing, first priority security interest in, Lien on, and right of set-off against, all of the Borrower's right, title and interest in and to the following personal property, whether now owned or hereafter acquired or arising and regardless of where located and whether or not in the possession of the Borrower (collectively referred to herein as the "Collateral"): (a) all right, title and interest in and to, and in connection with, the Tax Credit, the Tax Credit Proceeds and the Tax Credit Purchase Agreement; (b) all accounts, contract rights, general intangibles, negotiable instruments and investment property related to the Tax Credit, the Tax Credit Proceeds or the Tax Credit Purchase Agreement; and (c) all accessions to, substitution for, and replacements, proceeds, and proceeds of proceeds of any of the foregoing, including, without limitation, proceeds of any insurance policies and claims against third Persons.

Also in connection with the Tax Credit Loan, the Debtor executed a *Notice Pursuant to UCC Section 9406 of Assignment and Irrevocable Direction to Pay and Account* (the "UCC 9406 Assignment") whereby the Debtor irrevocably assigned the purchase price under the Tax Credit Purchase Agreement as security for the Debtor's obligations to GEPF.  The Debtor further executed *a Film Production Incentive Administration Agreement* with GEPF.

"**Tax Credit Purchase Agreement**" means that certain Film Tax Credit Purchase Agreement with Apple, Inc. on April 1, 2013, as amended.

"**Unimpaired**" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

"**Unliquidated Claim**" means any Claim for which a Proof of Claim has been Filed with the Bankruptcy Court but was not Filed in a sum certain, and which Claim has not been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date.

"**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

"**U.S. Trustee Fees**" means fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

"**Voting Instructions**" means the instructions for voting on the Plan contained in the Disclosure Statement and in the Ballots.

"**Voting Record Date**" means the date as of which the identity of Holders of Equity Interests is set for purposes of determining the Entities entitled to receive distributions and vote on the Plan. Pursuant to Bankruptcy Rules 3017(d) and 3018(a); this date is the date of entry of the Bankruptcy Court's order approving the Disclosure Statement or such other date as the Bankruptcy Court may set.

**B.    Rules of Construction.**

1.    The rules of construction in Bankruptcy Code section 102 apply to this Plan.

2.    Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

3.    A term that is used in this Plan and that is not defined in this Plan has the meaning, if any, attributed to that term in the Bankruptcy Code or the Bankruptcy Rules.

4.    The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement.

5.    Whenever it is appropriate from the context, each term in this Plan, whether stated in the singular or the plural, includes both the singular and the plural.

6.    Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms. No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially and negatively affected by the change.

7.    Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

8.    Any reference to a person or entity includes the successors and assigns of such person or entity.

9.    Unless otherwise indicated, the phrase "under the Plan" or "under this Plan" and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

10.    Unless otherwise specified, all references to Sections or Exhibits are references to this Plan's Sections or Exhibits.

11.    The words "herein," "hereto," "hereunder," and other words of similar import refer to this Plan in its entirety rather than to only a particular portion.

## II.

## DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND INTERESTS

### A.    Summary and Classification of Claims and Equity Interests.

This Section classifies Claims and Equity Interests, except for Administrative Claims and Priority Tax Claims, which are not classified, for all purposes, including voting, confirmation, and distributions under the Plan. The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

The following table summarizes unclassified Claims and the Classes of Claims and Equity Interests under the Plan:

| CLASS/ UNCLASSIFIED CLAIMS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| Unclassified Claims | Administrative Claims and Priority Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 1 | Secured Claim of GEPF, LLC | Unimpaired | Not Entitled to Vote |
| Class 2 | Secured Claim of Prospect Park, LLC | Unimpaired | Not Entitled to Vote |
| Class 3 | Priority Claims (Other than Priority Tax Claims) | Unimpaired | Not Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Equity Interests | Impaired | Entitled to Vote |

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM OR EQUITY INTEREST THAT IS NOT ALLOWED.**

The treatment in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights (including any Liens) that each entity holding an Allowed Claim or an Allowed Equity Interest may have in or against the Debtor, the Estate, the Liquidating Estate or their respective property. This treatment supersedes and replaces any agreements or rights those entities may have in or against the Debtor, the Estate, the Liquidating Estate or their respective property. All distributions in respect of Allowed Claims will be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Allowed Claim, if any.

B.    **Allowance and Treatment of Unclassified Claims (Administrative Claims and Priority Tax Claims).**

1.    **Administrative Claims.**

(a) **U.S. Trustee Fees.**

U.S. Trustee Fees shall be allowed in accordance with 28 U.S.C. § 1930. The Disbursing Agent will pay to the U.S. Trustee all fees due and owing under 28 U.S.C. § 1930 in cash on the Effective Date.

**(b) Professional Fee Claims.**

A Professional Fee Claim of one of the Debtor's Professionals will be allowed only if:

(i)    On or before 60 days after the Effective Date, the entity holding such Professional Fee Claim both Files with the Bankruptcy Court a final fee application or a motion requesting allowance of the fees and serves the application or motion on the Liquidating Trustee and his/her counsel, the Debtor and its counsel (to the extent, if any, that the final fee application is served prior to the Effective Date), the U.S. Trustee, and on all parties listed on the post-Effective Date special service list maintained by the Liquidating Trustee established in accordance with Section VII.H of the Plan; and

(ii)    The Bankruptcy Court allows the Claim.

Any party in interest may File an objection to such application or motion within the time provided by the Bankruptcy Rules or within any other period that the Bankruptcy Court establishes. Entities holding Professional Fee Claims that do not timely File and serve a fee application or motion for payment will be forever barred from asserting such Professional Fee Claim against the Debtor, the Estate, the Liquidating Estate, or its respective property.

Holders of Professional Fee Claims may agree to payment arrangements different than what is provided hereunder, except that in all circumstances Professional Fee Claims are subject to final approval by the Bankruptcy Court.

The interest of Jones Day in the proceeds of the ABC Litigation shall be as set forth in any order of the Court entered on the Debtor's Application to retain Jones Day as Special Litigation Counsel [ECF No. 84], and such interests of Jones Day shall not be modified or otherwise affected by this Plan.

**(c) Other Administrative Claims.**

Unless otherwise expressly provided in the Plan, an Administrative Claim (other than U.S. Trustee Fees and a Professional Fee Claim) will be allowed <u>only</u> if:

(i)    On or before the Administrative Claim Bar Date, the person or entity asserting an Administrative Claim Files and serves a request for allowance of an Administrative Claim in compliance with the procedures established by the Court under the Administrative Claim Bar Date Order; and

(ii)    The Court allows the Claim by Final Order.

Any party in interest may File an objection to such Administrative Claim within the time provided by the Bankruptcy Rules or within any other period that the Bankruptcy Court establishes. **Except as otherwise expressly provided in the Plan, entities holding Administrative Claims (other than U.S. Trustee Fees or Professional Fee Claims, which are addressed in Sections II.B.1(a) and II.B.1(b) above) that have not timely Filed and served a request for allowance an Administrative Claim by the Administrative Claim Bar Date are forever barred from asserting such Administrative Claim against the Debtor, the Estate, the Liquidating Estate, or their respective property.**

Unless the entity holding a Allowed Administrative Claim (other than U.S. Trustee Fees, Professional Fee Claims) agrees to different treatment, the Disbursing Agent will pay to the entity holding such Allowed Administrative Claim Cash in the full amount of such Allowed Administrative Claim, on or before the latest of: (a) the Distribution Date; (b) fifteen (15) days after the date on which the Allowed Administrative Claim becomes an Allowed Administrative Claim; and (c) the date on which the Allowed Administrative Claim first becomes due and payable in accordance with its terms.

### (d) Costs of the Liquidating Estate.

Allowance and payment of the post-Effective Date fees and expenses of the Liquidating Trustee and his professionals shall be governed by the provisions of the Liquidating Estate Agreement.

### 2.    Priority Tax Claims.

Unless the entity holding a Priority Tax Claim Allowed by the Court agrees to different treatment, the Disbursing Agent will pay to the entity holding an Allowed Priority Tax Claim cash in the full amount thereof on or before the latest of:  (a) the Distribution Date; (b) fifteen (15) days after the date on which the Priority Tax Claim becomes an Allowed Priority Tax Claim; and (c) the date on which the Allowed Priority Tax Claim first becomes due and payable in accordance with its terms.

### C.    Classification and Treatment of Classified Claims and Interests.

### 1.    Class 1 (Secured Claim of GEPF, LLC).

Class 1 comprises the Secured Claim of GEPF, LLC.  Class 1 is unimpaired under the Plan.  In full satisfaction of any Allowed Class 1 Claim that has not been satisfied or extinguished as of the Effective Date, the Disbursing Agent will pay the holder of such Allowed Class 1 Claim the full amount thereof within the time frames and in the manner set forth in the existing agreements which evidence the Tax Credit Loan. All liens of GEPF, LLC against property of the Debtor shall continue after confirmation of this Plan with the same validity, priority and to the same extent that such liens existed on the Petition Date.

### 2.    Class 2 (Secured Claim of Prospect Park, LLC).

Class 2 comprises all Secured Claim of Prospect Park, LLC against the Debtor.  The Collateral for the Class 2 Claim is the Debtor's rights to payment under the Content Deal Memorandum executed on or about January 7, 2013 between PPN and Hulu, LLC (the "Hulu Agreement"), and all proceeds arising therefrom including all of PPN's rights to payments under the Hulu Agreement, together with all products and proceeds of the foregoing.  Class 2 is unimpaired under the Plan.  In full satisfaction of any Allowed Class 2 Claim that has not been satisfied or extinguished as of the Effective Date, the Disbursing Agent will, at its option, (1) pay the holder of such Allowed Class 2 Claim the full amount thereof on or before the latest of: (a) the Distribution Date and (b) fifteen (15) days after the date on which such Claim becomes an Allowed Secured Claim, or (2) surrender the Collateral securing the Allowed Secured Claim to the holder thereof, in full satisfaction thereof.   All liens of Prospect Park, LLC against property of the Debtor shall continue after confirmation of this Plan with the same validity, priority and to the same extent that such liens existed on the Petition Date, except to the extent modified by order of the Bankruptcy Court.

Prospect Park, LLC has previously agreed to a carve-out from its secured claim in the amount of $50,000 to pay a "Litigation Cost Reserve" as set forth in the Debtor's Application to retain Jones Day as Special Litigation Counsel [ECF No. 84]. Such carve-out shall be taken into account in determining any distribution to the Class 2 claimant under the Plan.

### 3. Class 3 (Priority Claims other than Priority Tax Claims).

Class 3 comprises all Priority Claims, other than Priority Tax Claims, against the Consolidated Debtor. Class 3 is unimpaired under the Plan. In full satisfaction of any Allowed Class 3 Claim that has not been satisfied or extinguished as of the Effective Date, the Disbursing Agent will pay the holder of such Allowed Class 3 Claim the full amount thereof from Estate Cash on or before the latest of: (a) the Distribution Date and (b) fifteen (15) days after the date on which such Claim becomes an Allowed Priority Claim. The Debtor does not believe that there are any Class 3 Priority Claims.

### 4. Class 4 (General Unsecured Claims).

Class 4 comprises all General Unsecured Claims against the Debtor. Class 4 is Impaired under the Plan. In full satisfaction of any Allowed Class 4 Claim that has not been satisfied or extinguished as of the Effective Date, the Disbursing Agent will pay the holder of such Allowed Class 3 Claim a Pro Rata share of the Debtor's Distributable Assets on or before the latest of: (a) the Distribution Date and (b) fifteen (15) days after the date on which such Claim becomes an Allowed General Unsecured Claim. If the amount of the Debtor's Distributable Assets exceeds the total amount of Allowed General Unsecured Claims, each holder of an Allowed Class 4 Claim shall be paid in full plus interest at the federal judgment rate established by 28 U.S.C. § 1961 as of the Petition Date.

### 5. Class 5 (Equity Interests).

Class 5 comprises all Equity Interests. Class 5 is Impaired under the Plan and entitled to vote to accept or reject the Plan. In full satisfaction of any Allowed Class 5 Equity Interest that has not been satisfied or extinguished as of the Effective Date, and only if all unclassified claims and claims in Classes 1, 2, 3 and 4 have been satisfied in full, the Disbursing Agent will pay to the holder of such Allowed Class 5 Equity Interest Claim, a Pro Rata share of the Debtor's Distributable Assets.

## III.

## MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN

### A. Funding of the Plan.

As set forth in Section II of the Plan, all obligations under the Plan will be paid by the Disbursing Agent from Estate Cash and the proceeds, if any, realized by the Liquidating Estate in respect of Retained Actions, as well as income received by the Debtor pursuant to (i) the Digital Video Distribution Agreement between the Debtor and Apple, Inc. and (ii) Content Deal Memorandum between the Debtor and Hulu, LLC.

### B.    The Liquidating Estate.

### 1.    Continuation of the Estate.

On and after the Effective Date, the Estate shall continue as the Liquidating Estate.  The Liquidating Estate shall hold title to all of the assets of the Estate, as well as any property acquired after the Effective Date that otherwise would become property of the Estate under Bankruptcy Code section 541, free and clear of all claims, liens, encumbrances and other interests, except as otherwise provided in the Plan.  The Liquidating Trustee shall hold such assets of the Liquidating Estate in trust for the benefit of holders of Allowed Claims and Allowed Equity Interests that are entitled under the Plan to receive the net proceeds thereof.  The Liquidating Estate shall be fully liquidated and Cash shall be distributed to holders of Allowed Claims and Allowed Equity Interests as soon as is reasonably practicable following the Effective Date in accordance with the Plan.

### 2.    Preservation/Vesting of Rights of Action.

Except as expressly released pursuant to the Plan, pursuant to section 1123(b) of the Bankruptcy Code, the Liquidating Trustee, on behalf of the Liquidating Estate shall be vested with and shall retain and may enforce any and all claims, rights, and causes of action that the Debtor or the Estate may hold or have against any entity, including (i) Avoidance Actions, (ii) any legal or equitable rights to subordinate and/or disallow Claims, (iii) any causes of action that could be brought on behalf of the Debtor, the Estate, the Liquidating Estate; and (iv) any and all other claims, rights or causes of action of any kind or nature of the Debtor, the Estate or the Liquidating Estate that may exist under applicable bankruptcy law or non-bankruptcy law, including (without limitation) the Retained Actions.  Upon the Effective Date, the Liquidating Trustee (and only the Liquidating Trustee) shall have standing to assert any and all claims, rights, causes of action and defenses vested in the Liquidating Estate.

Any order entered by the Court approving the Debtor's Application to retain Jones Day as Special Litigation Counsel [ECF No. 84] shall be binding of the Liquidating Trustee to the extent set forth in such order.

### 3.    Appointment of Steering Committee

Upon the Effective Date, a Steering Committee shall be constituted.  The Steering Committee shall have three members.  The initial membership of the Steering Committee shall be as follows: (i) an individual designated by the Official Committee of Unsecured Creditors; (ii) Jeffrey E. Kwatinetz or his designee, and (iii) a third member selected by mutual agreement of the other two members.

The Liquidating Trustee shall update the Steering Committee on developments in the case, and shall consult with the Steering Committee on major decisions involving the liquidation of the estate, including the commencement or settlement of any litigation claims.

The Steering Committee and any professional to the Steering Committee shall be entitled to receive, on a monthly basis, payment of fees and reimbursement of reasonable expenses from the assets of the Liquidating Estate in accordance with the Liquidating Estate Agreement.  In the event there is insufficient Estate Cash to satisfy the fees and expenses incurred by the Steering Committee and its professionals following the Effective Date, such fees and expenses shall be satisfied with the cash proceeds of the Avoidance Actions, when and to the extent they are realized.

The members of the Steering Committee shall serve for the duration of the Liquidating Estate, subject to earlier death, resignation, incapacity or removal as provided in the Liquidating Estate Agreement. The Steering Committee shall be authorized, without further order of the Bankruptcy Court, to employ such persons, including professionals, as deemed necessary to enable the Steering Committee to perform its functions under the Plan, and the costs of such employment and other expenditures shall be paid solely from assets of the Liquidating Estate in accordance with the Liquidating Estate Agreement.

### 4.     Appointment of the Liquidating Trustee.

Pursuant to 11 U.S.C. § 1129(a)(5), consistent with the interests of creditors and equity security holders, and consistent with public policy, the Confirmation Order shall appoint, effective on the Effective Date, James S. Feltman of Mesirow Financial Consulting, LLC to act as the Liquidating Trustee, or such other person as may be appointed pursuant to the terms of the Liquidating Estate Agreement. The Liquidating Trustee shall be free to act as he deems appropriate, in his discretion, to effectuate the terms of the Plan and the Liquidating Estate Agreement.

The Liquidating Trustee and any professional to the Liquidating Trustee shall be entitled to receive, on a monthly basis, payment of fees and reimbursement of reasonable expenses from the assets of the Liquidating Estate in accordance with the Liquidating Estate Agreement. In the event there is insufficient Estate Cash to satisfy the fees and expenses incurred by the Liquidating Trustee and his professionals following the Effective Date, such fees and expenses shall be satisfied with the cash proceeds of the Avoidance Actions, when and to the extent they are realized.

The Liquidating Trustee shall serve for the duration of the Liquidating Estate, subject to earlier death, resignation, incapacity or removal as provided in the Liquidating Estate Agreement. If James S. Feltman is not able to serve for the duration of the Liquidating Estate, a successor shall be chosen pursuant to the terms of the Liquidating Estate Agreement. The Liquidating Trustee shall be authorized, without further order of the Bankruptcy Court, to employ such persons, including professionals, as deemed necessary to enable the Liquidating Trustee to perform his functions under the Plan, and the costs of such employment and other expenditures shall be paid solely from assets of the Liquidating Estate in accordance with the Liquidating Estate Agreement.

The Liquidating Trustee shall perform his obligations under the Plan without bond. The Liquidating Trustee shall have no liability to any person or entity entitled to receive a distribution pursuant to the Plan for any losses, damages, claims or causes of action, other than those primarily resulting from the Liquidating Trustee's action or failure to act arising out of, in connection with or resulting from the Liquidating Trustee's gross negligence or willful misconduct  The Liquidating Estate shall indemnify, defend and hold the Liquidating Trustee and his agents and advisors harmless from and against any claims, damages, costs, fines, penalties, liabilities, attorneys' and other professional fees and disbursements, suffered, incurred by, or asserted against any such party in connection with the rendition of services to the Liquidating Estate, provided that such indemnification shall not apply to the extent any such claims, damages, costs, fines, penalties, liabilities, attorneys' and other professional fees and disbursements, resulted primarily from gross negligence or willful misconduct of the Estate Representative, its agent or advisors, as the case may be, as determined by a Final Order. Any such indemnification claims shall be paid prior and in preference to any other payments or distributions to be made from the Liquidating Estate.

16

### 5.    Powers and Duties of the Liquidating Trustee.

On and after the Effective Date, the Liquidating Trustee shall be the duly authorized representative of the Liquidating Estate for the purpose of implementing the Plan.  Among other things, the Liquidating Trustee shall have the following rights, powers and duties:

      a.     liquidate, in accordance with the Plan, the assets of the Liquidating Estate;

      b.     serve as Disbursing Agent under the Plan;

      c.     in the Liquidating Trustee's reasonable business judgment, investigate, prosecute, settle and/or abandon rights, actions or litigation of the Liquidating Estate, including the Retained Actions;

      d.     manage the affairs of the Liquidating Estate;

      e.     collect and marshal all assets of the Liquidating Estate, reduce such assets to Cash, and make interim and final distributions in accordance with the Plan;

      f.     monitor and enforce the implementation of the Plan;

      g.     file all tax and regulatory forms, returns, reports and other documents required with respect to the Liquidating Estate;

      h.     as soon as reasonably practicable, but in no event later than fifteen (15) days after the Effective Date, serve a notice of Effective Date on all holders of Claims and Equity Interests. The notice of Effective Date shall include a notice that the bar date for filing Rejection Damage Claims (or other Claims for damages) arising from the rejection under the Plan of executory contracts or unexpired leases shall be 30 days after the mailing of notice of the Effective Date, as set forth in Section III.A.2;

      i.     in the Liquidating Trustee's reasonable business judgment, manage, control, prosecute and/or settle on behalf of the Liquidating Estate, objections to Claims on account of which the Liquidating Trustee (as Disbursing Agent) will be responsible (if Allowed) for making distributions under the Plan;

      j.     submit all required U.S. Trustee and Bankruptcy Court reports and pay all required U.S. Trustee Fees until the case is closed;

      k.     take all actions necessary and create any documents necessary to wind up the affairs of the Liquidating Estate and implement the Plan; and

      l.     take all necessary actions and File all appropriate motions to obtain an order closing the Cases.

### 6.    Termination of the Liquidating Estate.

The Liquidating Estate shall terminate when the Liquidating Trustee has performed all of his duties under the Plan, including the final distribution of all the property of the Liquidating Estate, which date shall not be more than 48 months after the Effective Date; provided, however, that, upon a motion

filed by a party-in-interest, including the Liquidating Trustee, upon a showing of cause, the Bankruptcy Court may extend the duration of the Liquidating Estate so long as shall be necessary to liquidate and distribute property and resolve any and all litigation relating to the Plan or the Case.

### 7.    Additional Provisions Regarding the Liquidating Estate.

In addition to the provisions contained in the Plan with respect to duties of the Liquidating Trustee, the Liquidating Estate Agreement will provide for, among other things, other actions to be taken by the Liquidating Trustee, the removal of the Liquidating Trustee, or nomination of a successor Liquidating Trustee and the effect of actions by the Liquidating Trustee, subject to Bankruptcy Court approval.

### 8.    Negotiation and Approval of Liquidating Estate Agreement

The Debtor and the proposed Liquidating Trustee, in consultation with the Official Committee of Unsecured Creditors, shall negotiate the terms of the Liquidating Estate Agreement, and shall file the proposed Liquidating Estate Agreement with the Bankruptcy Court no later than five (5) business days prior to the Confirmation Hearing.  At the Confirmation Hearing, the Debtor shall seek the Bankruptcy Court's approval of the Liquidating Estate Agreement.

### C.    Avoidance Actions and Claims Objections.

On and after the Effective Date, the Liquidating Trustee shall have the right and standing to prosecute, abandon, and/or settle any Retained Action and any Claim Objection.

All Retained Actions and Claims Objections shall be subject to all defenses and setoffs that could have been asserted against the Debtor or the Estate with respect thereto.  The costs of investigating, litigating, settling, collecting, recovering or otherwise pursuing any Retained Action or Claim Objection shall be borne by the Liquidating Estate.

Except as provided in Section II.B.1 (regarding the allowance of Administrative Claims), objections to any Claim must be Filed and must be served on the entity holding such Claim by the Claim Objection Deadline.

### D.    Distribution of Property Under the Plan.

The following procedures set forth in the Plan apply to distributions made pursuant to the Plan by the Disbursing Agent.  The Disbursing Agent will serve without bond and shall make all distributions under the Plan, except where otherwise provided.  To the extent required by applicable law, the Disbursing Agent in making cash distributions under the Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Liquidating Trustee may withhold the entire cash distribution due to any holder of an Allowed Claim or Allowed Equity Interest until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.

### 1.    Manner of Cash Payments Under the Plan.

Cash payments to domestic entities holding Allowed Claims and Allowed Equity Interest will be tendered in United States dollars and will be made by checks drawn on a United States domestic bank or

by wire transfer from a United States domestic bank. Payments made to foreign creditors holding Allowed Claims or Allowed Equity Interests may be paid, at the option of the Liquidating Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

### 2. No *De Minimis* Distributions.

Notwithstanding anything to the contrary in this Plan, no cash payment of less than $25 will be made to any entity. No consideration will be provided in lieu of the *de minimis* distributions that are not made under this Section.

### 3. No Distribution with Respect to Disputed Claims.

No payments of cash or distributions of other property or other consideration of any kind shall be made on account of any Disputed Claim or Disputes Equity Interest unless and until such Claim or Equity Interest becomes an Allowed Claim or an Allowed Equity Interest or is deemed to be such for purposes of distribution, and then only to the extent that the Claim or Equity Interest becomes, or is deemed to be for distribution purposes, an Allowed Claim or an Allowed Equity Interest. The presence of a Disputed Claim or Disputed Equity Interest in any Class will not be a cause to delay distribution to Allowed Claims or Allowed Equity Interests in that Class or in other Classes, so long as a reserve is created for the Disputed Claim or Disputed Equity Interest in accordance herewith. Unless otherwise provided in the Plan, any holder of a Claim or Equity Interest that becomes an Allowed Claim or an Allowed Equity Interest after the Effective Date will receive any distribution that it would have received had its Allowed Claim or Allowed Equity Interest been Allowed as of the Effective Date within fifteen (15) days from the date that such Claim or Equity Interest becomes an Allowed Claim or an Allowed Equity Interest.

### 4. Delivery of Distributions and Undeliverable/Unclaimed Distributions.

#### (a) Delivery of Distributions in General.

The Liquidating Trustee shall make distributions to each holder of an Allowed Claim or Allowed Equity Interest by mail as follows: (a) at the address set forth on the proof of Claim filed by such holder of an Allowed Claim; (b) at the address set forth in any written notice of address change delivered to the Liquidating Trustee after the date of any related proof of Claim; (c) at the address reflected in the Schedules if no proof of Claim is filed and the Liquidating Trustee has not received a written notice of a change of address; or (d) at the address of record for Holders of Equity Interests as determined by the Distribution Agent.

**(b)      Undeliverable and Unclaimed Distributions.**

If the distribution to the Holder of any Allowed Claim or Allowed Equity Interest is returned as undeliverable, no further distribution shall be made to such Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then current address.  Subject to the other provisions of the Plan, undeliverable distributions shall remain in the possession of the Liquidating Trustee pursuant to this Section until such time as a distribution becomes deliverable.  All undeliverable cash distributions will be held in unsegregated, interest-bearing bank accounts for the benefit of the entities entitled to the distributions.   These entities will be entitled to any interest actually earned on account of the undeliverable distributions.  The bank account will be maintained in the name of the Liquidating Trustee but it will be accounted for separately.

Any holder of an Allowed Claim or Allowed Equity Interest who does not assert a claim in writing for an undeliverable distribution within one (1) year after the Effective Date shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under the Plan, or from asserting a Claim against the Debtor, the Estate, Liquidating Estate, or their respective property, and the Claim or Equity Interest giving rise to the undeliverable distribution will be barred.

Any undeliverable distributions that are not claimed under this Section will be transferred to the Liquidating Trustee to be included in the Consolidated Debtor's Distributable Assets for the benefit of Holders of other Claims and Equity Interests under the Plan.

**(c)      Estimation of Disputed Claims or Equity Interests for Distribution Purposes.**

The Liquidating Trustee may move for a Bankruptcy Court order estimating any Disputed Claim or Disputed Equity Interest.  The estimated amount of any Disputed Claim or Disputed Equity Interest so determined by the Bankruptcy Court shall constitute the maximum recovery that the holder thereof may recover from the Liquidating Estate, irrespective of the actual amount ultimately Allowed.

**E.      Dissolution of Debtor Entities/Termination of Officers and Directors.**

On the Effective Date, and without further action by any party: the services of the Debtor's officers, directors and authorized representative automatically are terminated; provided, however, that notwithstanding the foregoing, the Liquidating Trustee shall have and retain such authority as set forth in the Plan and the Liquidating Estate Agreement to dispose of the assets of the Liquidating Estate and otherwise implement the Plan in accordance with its terms.

## IV.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All executory contracts and unexpired leases not previously assumed or rejected by the Debtor under Section 365 of the Bankruptcy Code with the approval of the Bankruptcy Court will be deemed rejected by the Debtor as of the Confirmation Date.  The Confirmation Order shall constitute an Order of the Bankruptcy Court approving all such rejections hereunder as of the Effective Date. Any Claim for damages arising from any such rejection must be filed within 30 days after the mailing of notice of the entry of the Confirmation Order or such Claim shall be forever barred, shall not be enforceable against the Debtor, its Estate, or the Liquidating Estate, and the holder of such Claims shall receive no distribution under this Plan or otherwise on account of such Claims.

## V.

## EFFECT OF CONFIRMATION OF THE PLAN

### A.    Binding Effect of Plan/Non-Discharge of the Debtor.

Upon the effective date, Bankruptcy Code section 1141 shall become applicable with respect to the Plan and the Plan shall be binding on all parties to the fullest extent permitted by Bankruptcy Code section 1141(a).  In accordance with Bankruptcy Code section 1141(d)(3), the plan does not discharge the Debtor.  Bankruptcy Code section 1141 nevertheless provides, among other things, that the property dealt with by the Plan shall be vested in the Liquidating Estate free and clear of all Claims and interests of creditors and equity security holders.  Accordingly, no Entity holding a Claim against or Equity Interest in the Debtor may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan unless and only to the extent that such Entity is the Holder of an Allowed Claim or Allowed Equity Interest entitled to a distribution in accordance with the terms of the Plan.  As of the Effective Date, all parties are precluded from asserting against any property that is to be distributed under the Plan any Claims, rights, causes of action, liabilities, or interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

### B.    Exculpation and Limitation of Liability.

The Debtor and the Liquidating Trustee and their respective officers, directors, managers, employees, members, agents, advisors, accountants, attorneys and representatives (collectively, the "Exculpated Parties"), will neither have nor incur any liability to any Entity for any action in good faith taken or omitted to be taken after the Petition Date in connection with or related to the Chapter 11 Case or the formulation, preparation, dissemination, implementation, Confirmation or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; provided, however, that this limitation will not affect or modify the obligations created under this Plan, or the rights of any Holder of an Allowed Claim or Allowed Equity Interest to enforce its rights under the Plan and shall not release any action (or inaction) constituting willful misconduct, fraud or gross negligence (in each case subject to determination of such by Final Order of a court of competent jurisdiction); provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this Plan and such reasonable

21

reliance shall form an absolute defense to any such claim, cause of action, or liability. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of section 1125(e) of the Bankruptcy Code.

### C.    Injunctive Relief Relating To Releases.

Except as otherwise expressly provided in this Plan, all Entities that have held, hold or may hold Claims against or Equity Interests in the Debtor are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtor, its Estate, the Liquidating Trustee, the Liquidating Estate, the Professionals, or any of their property on account of any Claims or causes of action arising from events prior to the Effective Date, (i) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (ii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; (iii) asserting any right of setoff, right of subrogation or recoupment against any obligation, debt or liability due to the Debtor, and (iv) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan with respect to such Claim or Equity Interest. Except as expressly provided herein, the Debtor, the Liquidating Estate and the Liquidating Trustee expressly reserve all rights and defenses that the Debtor may have (including, without limitation, the rights of subrogation and recoupment) with respect to any obligation, debt or liability allegedly due to any Entity.

By accepting Distributions pursuant to this Plan, each Holder of an Allowed Claim receiving Distributions pursuant to this Plan will be deemed to have specifically consented to the injunctions set forth herein. Nothing in this section shall prohibit the Holder of a timely Filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of any obligations of the Debtor under this Plan.

### D.    Terms of Existing Injunctions or Stays

Unless otherwise provided herein, all injunctions or stays provided for in these Chapter 11 Cases pursuant to sections 105, 362 or 525(a) of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. The Plan and Confirmation Order will permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any Claims, Equity Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released or enjoined pursuant to this Plan and the Bankruptcy Code.

### VI.

### OTHER PLAN PROVISIONS

### A.    The Effective Date.

The Plan will not become binding or effective until and unless the Effective Date occurs. The Effective Date will be the first Business Day, as determined by the Debtor, in its reasonable discretion, on which the following conditions have been satisfied:

(1)    The Confirmation Order in form and substance satisfactory to the Debtor shall have been entered and become a Final Order and shall provide that the Debtor, the Liquidating Trustee and the Liquidating Estate are authorized and directed to take all actions

necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases and other agreements or documents created in connection with the Plan or effectuate, advance, or further the purposes thereof;

(2)     All Plan Exhibits shall be, in form and substance, reasonably acceptable to the Debtor and shall have been executed and delivered by all parties' signatory thereto;

(3)     The Debtor shall be authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases and the agreements or documents created in connection with, and expressly provided for under, the Plan;

(4)     All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed; and

(5)     In the reasonable judgment of the Liquidating Trustee, the Debtor shall have sufficient Cash available to satisfy in full, or adequately reserve for, all Allowed Claims.

(6)     The Debtor may waive any of the conditions of the Confirmation and/or consummation of this Plan, in whole or in part, set forth in this Article VI at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to obtain Confirmation and/or achieve Consummation of this Plan.

**B.     Stay of Confirmation Order Shortened.**

The 14-day stay otherwise applicable to the Confirmation Order under Federal Rule of Bankruptcy Procedure 3020(e) shall be shortened from ten (10) days to three (3) days following entry of the Confirmation Order.

**C.     Revocation of Plan/No Admissions.**

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will: (a) be deemed to be an admission by the Debtor with respect to any matter set forth in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgment, or release of any Claims against, or any Equity Interests in, the Debtor, or of any claims of the Debtor; or (c) prejudice in any manner the rights of any party in any further proceedings.

**D.     Exemption from Certain Transfer Taxes.**

In accordance with Bankruptcy Code section 1146(a), neither (i) the issuance, transfer or exchange of a security, nor (ii) the delivery of an instrument or transfer under the Plan or the Sale Order shall be taxed under any law imposing a stamp or similar tax, regardless, in the case of the transfers effectuated under the Sale Order, of the fact that such transfers occurred before entry of the Confirmation Order. The Confirmation Order shall direct all governmental officials and agents to forego the assessment and collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without payment of such tax or other governmental assessment.

23

### E.   Modifications of Plan.

Subject to the restrictions set forth in Bankruptcy Code section 1127, the Debtor reserves the right to non-materially alter, amend, or modify the Plan before its substantial consummation.

### F.   Cram-Down.

The Debtor reserves the right to request the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code section 1129(b) if one or more impaired Classes votes to reject the Plan (provided the other requirements of Bankruptcy Code section 1129 are satisfied).

### G.   Post-Effective Date Effect of Evidences of Claims or Equity Interests.

Commencing on the Effective Date, notes, certificates, warrants, and other evidences of Claims against or Equity Interests in the Debtor constitute only the right to receive the distributions, if any, to the extent set forth under the Plan.

### H.   Post-Effective Date Notices.

Following the Effective Date, all parties-in-interest who wish to receive, or continue to receive; notices of all pleadings Filed in the Cases must File a new request for special notice and serve it on the Liquidating Trustee and his counsel and the U.S. Trustee.  The Liquidating Trustee shall maintain and keep current the post-Effective Date special notice list, and make it available to all parties in interest upon written request.  All pleadings, notices and other papers Filed in the Cases following the Effective Date (other than the notice of Effective Date) must be served on the parties on the post-Effective Date special notice list maintained by the Liquidating Trustee.

### I.   Successors and Assigns.

The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity, whether or not such entity is impaired under this Plan and whether or not such Entity has accepted this Plan.

### J.   Saturday, Sunday or Legal Holiday.

If any payment or act under the Plan is required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

### K.   Headings.

The headings used in the Plan are inserted for convenience only and do not constitute a portion of this Plan or in any manner affect the provisions of this Plan or their meaning.

### L.   Severability of Plan Provisions.

If before confirmation the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted.  Notwithstanding any such

holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid, enforceable, and, as of the Effective Date, binding under its terms.

### M.    Governing Law.

Unless a rule of law or procedure is supplied by (a) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (b) an express choice of law provision in any agreement, contract, instrument, or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents, and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to the principles of conflict of laws thereof.

### N.    Retention of Jurisdiction.

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case after the Effective Date to the fullest extent provided by law, including the jurisdiction to:

1.    Allow, disallow, determine, liquidate, classify, establish the priority or secured or unsecured status of, estimate, or limit any Claim or Equity Interest;

2.    Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.    Ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of the Plan;

4.    Resolve any and all applications, motions, adversary proceedings, and other matters involving the Estate that may be pending on the Effective Date or that may be instituted thereafter in accordance with the terms of the Plan;

5.    Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents entered into in connection with the Plan;

6.    Resolve any and all controversies, suits, or issues that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any entity's rights or obligations in connection with the Plan;

7.    Resolve any and all controversies, suits, or issues that may arise in connection with the consummation, interpretation, or enforcement of the Bill of Sale or the Sale Order;

8.    Modify the Plan before or after the Effective Date pursuant to Bankruptcy Code section 1127, or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or Disclosure Statement; or remedy any defect or omission

or reconcile any inconsistency in any order of the Bankruptcy Court, the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Plan or Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

9.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

10.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

11.      Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; and

12.      Enter an order closing the Cases.

If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter, this Section shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## O.      Plan Embodies Settlement.

As described in the Disclosure Statement and in this Plan, this Plan constitutes a good faith compromise and settlement of certain claims and interests between and among the Debtor and other parties-in-interest in accordance with Bankruptcy Code section 1123(b).

## P.      Term of Bankruptcy Injunctions or Stays.

All injunctions or stays provided for in the Cases under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## Q.      Objections to Confirmation.

Objections to confirmation of this Plan are governed by Bankruptcy Rule 9014. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED IT WILL NOT BE CONSIDERED BY THE COURT.

### R.    Notices

Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) had delivery or (c) overnight delivery service, freight prepaid, and addressed as follows:

For the Debtor:

**GENOVESE JOBLOVE & BATTISTA, P.A.**
John H. Genovese (Fla. Bar No. 80852)
Heather L. Harmon (Fla. Bar No. 013192)
Michael L. Schuster (Fla. Bar No. 57119)
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Telephone:       (305) 349-2300
Facsimile:       (305) 349-2310)
Email:           jgenovese@gjb-law.com
                 hharmon@gjb-law.com


        and

**COUSINS CHIPMAN & BROWN, LLP**
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
1007 North Orange Street, Suite 1110
Wilmington, Delaware 19801
Telephone:       (302) 295-0191
Facsimile:       (302) 295-0199
Email:           chipman@cbllp.com
                 olivere@ccbllp.com

## VII.

## RECOMMENDATION AND CONCLUSION

The Debtor respectfully submits the foregoing Plan and urge entities that hold impaired Equity Interests to vote to accept the Plan by checking the box marked "Accept" on their Ballots and then returning the Ballots to the Ballot Tabulator by the Ballot Deadline, as directed in the Plan and Disclosure Statement.

Dated: August 7, 2014                    **PROSPECT PARK NETWORKS, LLC**


                                         /s/ Jeffrey E. Kwatinetz
                                         _____
                                         By:  Jeffrey E. Kwatinetz
                                         Its:  Authorized Representative
                                         (Electronic Signature Added by Consent)