## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PROSPECT PARK NETWORKS, LLC,[1] | Case No. 14-10520 (MFW) |
| Debtor. | **Objection Deadline: September 18, 2014 at 4:00 p.m. (ET)**<br>**Hearing Date: September 25, 2014 at 2:00 p.m. (ET)** |

## MOTION FOR ENTRY OF AN ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) DETERMINING DATES, PROCEDURES, AND FORMS APPLICABLE TO SOLICITATION PROCESS, (III) ESTABLISHING VOTE TABULATION PROCEDURES, AND (IV) ESTABLISHING OBJECTION DEADLINE AND SCHEDULING HEARING TO CONSIDER CONFIRMATION OF PLAN

The above-captioned debtor and debtor in possession file this *Motion for Entry of an Order (i) Approving Disclosure Statement, (ii) Determining Dates, Procedures, and Forms Applicable to Solicitation Process, (iii) Establishing Vote Tabulation Procedures, and (iv) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of Plan* (the "Motion"). In support of the Motion, the Debtor respectfully represents as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.     The statutory predicates for the relief sought herein are §§ 105(a), 1125 and 1126 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1]     The last four digits of the Debtor's federal tax identification number are 8495. The Debtor's headquarters and mailing address is 1840 Century Park East, 18th Floor, Los Angeles, California 90067.

## BACKGROUND

### A.    Commencement of the Chapter 11 Case

3.    March 10, 2014 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.    The Debtor has continued in possession of its assets and is operating and managing its affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.    No request has been made for the appointment of a trustee or examiner in the Chapter 11 Case.  On March 31, 2014, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 24].

### B.    Background of Debtor

6.    In April 2011, American Broadcasting Companies ("ABC") announced the cancellation of its storied soap operas *One Life to Live* ("OLTL") and *All My Children* ("AMC"). Seeing an opportunity to launch new episodes of these soap operas as original content for online consumption, the Debtor entered into an exclusive license agreement with ABC for all of the elements of OL TL and AMC storylines, characters, themes and plots. The Debtor eventually produced one new season of OLTL and of AMC, but damages caused by ABC's interference forced the Debtor to cease production after a single season.

7.    On April 18, 2013, the Debtor commenced an action against ABC in the Superior Court of the State of California, County of Los Angeles, seeking recovery of its damages and other available relief resulting from ABC's actions (the "ABC Lawsuit").  The ABC Lawsuit remains pending.

8.      As part of its business strategy in producing new episodes of OLTL and AMC, the Debtor filmed in the state of Connecticut.  Connecticut legislation provides for eligible multimedia companies to receive a tax credit on qualified production expenses incurred in the state.  The Debtor incurred such qualified production expenses in Connecticut in 2013, and is entitled to a tax credit voucher from the State of Connecticut for its production related expenditures within the State of Connecticut (the "Tax Credit").

9.      Prior to the Petition Date, the Debtor agreed to sell the Tax Credit, and pledged the anticipated proceeds from that sale as collateral to secure the Debtor's indebtedness to GEPF, LLC.  Specifically, the Debtor, as seller, entered into a Film Tax Credit Purchase Agreement on April 1, 2013, and a First Amendment to Tax Credit Purchase Agreement dated June 12, 2013 (together, the "Tax Credit Purchase Agreement").  By a Second Amendment to Tax Credit Purchase Agreement, the purchaser under the Tax Credit Purchase Agreement agreed to extend the "Closing Date" under the Tax Credit Purchase Agreement to September 30, 2014.

10.     On June 19, 2013, the Debtor entered into a Tax Credit Loan with GEPF, LLC d/b/a EP Financial Solutions ("GEPF"), through which the Debtor borrowed $5,007,140.00 from GEPF (the "Tax Credit Loan").  The Tax Credit Loan is comprised of borrowed funds in the amount of $4,243,308.00, lender fees in the amount of $125,143.00; a one year prepaid interest reserve in the amount of $388,332.00 and a holdback in the amount of $250,357.00.  The Tax Credit Loan is evidenced by a Promissory Note and Loan and Security Agreement each dated June 19, 2013.

11.     A more detailed overview of the Debtor and the reasons for the commencement of this Chapter 11 case is set forth in the *Declaration of Jeffrey Kwatinetz in Support of Debtor's*

*Chapter 11 Petitions* (the "Kwatinetz Declaration") filed contemporaneously herewith and incorporated herein by reference.

**C.      The Debtor's Plan and Disclosure Statement**

12.      On August 7, 2014, the Debtor filed the *Liquidating Plan of Prospect Park Networks, LLC under Chapter 11 of the Bankruptcy Code* (the "Plan") and the *Disclosure Statement for Liquidating Plan of Prospect Park Networks, LLC Under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement").

**<u>RELIEF REQUESTED</u>**

13.      By this Motion, the Debtor requests, among other things, that the Court enter an order (the "Solicitation Procedures Order"): (i) approving the Disclosure Statement, approving the dates, procedures, and forms applicable to the plan solicitation, noticing, and implementation process, including (a) confirming the authority of Genovese, Joblove & Battista, P.A. ("GJB") as noticing, solicitation, and balloting agent, (b) establishing a voting record date and setting a voting deadline, (c) approving the forms of ballots to be used for voting on the Plan, and (d) approving the notice procedures applicable to holders of unliquidated and disputed claims, holders of claims that are not impaired by the Plan or who are otherwise deemed to accept the Plan, and holders of claims who are deemed to reject the Plan, (iii) approving certain vote tabulation procedures, and (iv) establishing the deadline for filing objections to the Plan and scheduling the hearing to consider confirmation of the Plan.

**A.      Approval of the Disclosure Statement**

14.      Pursuant to section 1125 of the Bankruptcy Code, a debtor must provide its impaired creditors and equity holders with "adequate information" regarding the debtor's proposed chapter 11 plan.  Specifically, section 1125(a)(1) provides that—

> "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical reasonable investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the class to make an informed judgment about the plan, . . . .

11 U.S.C. § 1125(a)(1). Thus, a disclosure statement must, as a whole, provide information that is reasonably sufficient to permit an informed judgment by impaired creditors and equity interest holders entitled to vote on the chapter 11 plan. *See Kirk v. Texaco, Inc.*, 82 B.R. 678, 681 (S.D.N.Y. 1988); *In re Dakota Rail, Inc.*, 104 B.R. 138, 142 (Bankr. D. Minn. 1989). Whether a disclosure statement contains adequate information is determined by the facts and circumstances of each bankruptcy case. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988); *see also In re Copy Crofters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y 1988) (adequacy of disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed parties").

15.    The Court has broad discretion in determining whether a disclosure statement contains adequate information. *See Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998), *cert. denied*, 526 U.S. 1144 (1999); *In re Worldcom, Inc.*, No. M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."); *Kirk,* 82 B.R. at 682 ("The legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a): 'Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as

5

to what is necessary under the circumstances of each case . . . .'") (quoting H.R. REP. No. 595, at 408-09 (1977), *reprinted* in 1978 U.S.C.C.A.N. 5787, 6365).  This discretion allows courts to tailor the disclosures made in connection with a plan of reorganization to facilitate the effective reorganization of debtors in a broad range of businesses and circumstances. *See id.* ("In reorganization cases, there is frequently great uncertainty.  Therefore, the need for flexibility is greatest.").  Accordingly, the determination of the adequacy of information in a disclosure statement is made on a case-by-case basis, focusing on the unique facts and circumstances of each case.

16.     The Debtor believes the Disclosure Statement contains "adequate information" within the meaning of section 1125(a)(1) of the Bankruptcy Code.  Specifically, the Disclosure Statement provides a summary of: (a) the features, terms, and provisions of the Plan; (b) the Debtor's business; (c) events leading up to the Debtor's commencement of this Chapter 11 case; (d) events leading up to the formulation of the Plan; (e) significant events occurring during the Debtor's chapter 11 case; (f) the treatment of claims and interests under the Plan; (g) the means for implementing the Plan; (h) the tax consequences of the Plan; (i) the identity and role of the proposed Liquidating Trustee and the proposed Steering Committee; and (j) the Debtor's satisfaction of conditions precedent to confirmation of the Plan, including the "best interests" test.

**B.     Approval of Dates, Procedures, and Forms Applicable to Solicitation Process**

*(i)     Claims Agent*

17.     Pursuant to Local Rule 2002-1(g)(1), the Clerk is serving as the notice agent in this case.  Thus, the Debtor proposes to utilize its  counsel, GJB (the "Balloting Agent"), to assist the Debtor in soliciting votes on and providing notice of the Plan, including mailing solicitation

packages and notices, receiving and tabulating ballots cast on the Plan, and certifying to the Court the results of the balloting.

### (ii)    *Voting Record Date*

18.    Bankruptcy Rule 3018(a) provides that the record date for determining the holders of stock, bonds, debentures, notes, and other securities entitled to receive the materials specified in Bankruptcy Rule 3017(d), including ballots, is the "date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." *See* FED R. BANKR. P. 3018(a). Therefore, the Debtor requests that the Court ratify the date of entry of the Solicitation Order as the record date (the "Voting Record Date") for determining the Holders of Claims and Interests that are entitled to receive solicitation packages and/or notices, as more particularly described below.

### (iii)    *Voting Deadline*

19.    Pursuant to Bankruptcy Rule 3017(c), at the time of or before the approval of the disclosure statement, "the court shall fix a time within which the holders of claims and interests may accept or reject the plan...." FED. R. BANKR. P. 3017(c). The Debtor requests that the Court establish a date that is seven calendar days before the Confirmation Hearing, at 5:00 p.m. (Eastern Time) on such date as the deadline by which all ballots must be received by CCB (the "Voting Deadline"). The Debtor also requests that it be permitted, in its sole discretion, to extend the Voting Deadline as facts and circumstances may require without further order of the Court.

### (iv)    *Ballots*

20.    Bankruptcy Rule 3017(d) provides that ballots for accepting or rejecting a plan of reorganization should conform substantially to Official Form No. 14. The proposed form of

ballot (the "Ballot") attached hereto as Exhibit A is derived from Official Form No. 14, but includes certain modifications necessary to meet the particular requirements of the Plan. A Ballot will be distributed to creditors or interest holders in Classes eligible to vote to accept or reject the Plan.

### (v)    Solicitation of Votes

21.    Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of claims and/or interests upon approval of a disclosure statement. Unless otherwise ordered, such materials include the plan or a court-approved summary of the plan, the court-approved disclosure statement, notice of the voting deadline and any other information as the court may direct. FED R. BANKR. P. 3017(d).

22.    The Debtor proposes to cause CCB to transmit a solicitation package by first class mail to each of the Holders of Claims and Interests in Classes entitled to vote on the Plan in accordance with Bankruptcy Rule 3017(d) by a date to be established by the Court that is no more than five business days after the date of entry of the Solicitation Procedures Order (the "Solicitation Commencement Date"). The solicitation package shall contain the following:

    (a)    notice of the Confirmation Hearing and objection deadline;

    (b)    the Disclosure Statement;

    (c)    the Plan (appended to the Disclosure Statement);

    (d)    a Ballot;

    (e)    the Solicitation Procedures Order, without exhibits;

    (f)    a pre-addressed postage prepaid return envelope; and

    (g)    such other information as the Court may direct or approve.

(collectively, the "Solicitation Package").

23.     The Debtor proposes that the following Holders of Claims or Interests be permitted to vote on the Plan and thus to receive the Solicitation Package:

(a)     Any Holder, as of the Voting Record Date, of a Claim or Interest in Classes 4 and 5 (if applicable) —

- who has filed a timely proof of Claim (or untimely proof of Claim that has been Allowed as timely by the Court on or before the Voting Record Date), in the amount asserted in such proof of Claim, provided that such proof of Claim (i) has not been disallowed by an order of the Court entered on or before the Voting Record Date, (ii) is not the subject of an objection to the entirety of the Claim pending as of the Voting Record Date (with voting permitted only with respect to any amount thereof that is not subject to objection), (iii) has not been reduced by order of the Court or is not subject to an objection pending before the Court for reduction (with voting permitted only in the reduced or proposed reduced amount and/or classification), (iv) does not allege a Claim that is wholly unliquidated (with voting permitted only with respect to the amount thereof that is fixed); or –

- who has not filed a timely proof of Claim but which Claim is scheduled in the Debtor's Schedules, or any amendments thereto, but is not designated therein as contingent, unliquidated, or disputed or listed therein as zero or unknown in amount, in the amount set forth in the schedules, or any amendments thereto.

24.     To avoid duplication and reduce expenses, the Debtor proposes that voting creditors or interest holders who have filed duplicate proofs of Claim for the same underlying liability that are classified in the same Class should be entitled to receive only one Solicitation Package and one Ballot for voting their Claims with respect to that Class.  In addition, the Debtor proposes that voting creditors or interest holders who filed amended Claims after the Voting Record Date should be entitled to vote only the Claim evidenced by their initial timely proof of Claim, unless the initial proof of Claim has been disallowed.

*(vi)*     ***Treatment of Unliquidated or Disputed Claims***

25.     Pursuant to section 1126(a) of the Bankruptcy Code, only holders of allowed claims or interests are entitled to vote to accept or reject a plan.  Pursuant to Bankruptcy Rule

3018(a), a court may, after notice and hearing, temporarily allow a claim or interest for voting purposes.

26.    The Debtor proposes that any Holder of a Claim that is (i) asserted in a proof of claim as wholly unliquidated, (ii) asserted in an untimely proof of Claim (unless Allowed as timely prior to the Voting Record Date), or (iii) asserted in a proof of Claim as to which an objection to the entirety of the Claim is pending as of the Voting Record Date (collectively, the "Disputed Claimants") not be permitted to vote on the Plan except as provided herein.

27.    The Debtor proposes to distribute to each of the Disputed Claimants a package that includes the following:

(a)    a notice of disputed Claim status in substantially the form attached hereto as Exhibit B (the "Notice of Disputed Claim Status");

(b)    the Disclosure Statement;

(c)    the Plan (appended to the Disclosure Statement); and

(d)    such other information as the Court may direct or approve, (collectively, the "Disputed Claimant Package").

28.    The Notice of Disputed Claim Status will inform the Disputed Claimants that their Claims have been designated as wholly unliquidated or disputed.  The Notice of Disputed Claim Status also informs such claimants that absent (i) an order granting a motion seeking temporary allowance of Claims for voting purposes pursuant to Bankruptcy Rule 3018(a) (a "Rule 3018 Motion"), by the deadline described below, or (ii) an agreement with the Debtor regarding the classification and amount of such Claim for voting purposes, claimants are precluded from submitting a vote with respect to their wholly unliquidated or disputed Claim. Such claimants will be instructed in the notice to contact the Claims Agent to receive a Ballot for

any such Claim if a Rule 3018 Motion is timely filed and granted or if an agreement is reached with the Debtor.

29.     The Debtor requests that the Court fix a deadline at least ten (10) days prior to the Voting Deadline for Rule 3018 Motions to be filed with the Court and served upon Debtor's counsel (the "Rule 3018 Motion Deadline").  If any Disputed Claimant timely files and serves a Rule 3018 Motion, the Debtor requests that the Court hold a hearing and enter an order (the "Rule 3018 Order") to determine whether such Disputed Claimant should be allowed to vote on the Plan and the amount of such Claim for voting purposes only.

30.     In order to be allowed to vote on the Plan, a Disputed Claimant must (a) either (i) reach an agreement with the Debtor regarding the classification and amount of such Claim for voting purposes or (ii) have the Bankruptcy Court enter an order granting a Rule 3018 Motion no later than five days prior to the Voting Deadline, and (b) submit its Ballot by the Voting Deadline.  Such a procedure will help ensure an efficient tabulation of Ballots to be completed accurately by the Confirmation Hearing.

31.     Nothing in these procedures is intended to affect the Debtor's right to object to any proof of Claim after the Voting Deadline.

        *(vii)*     ***Notice of Non-Voting Status***

32.     In compliance with section 1123(a)(1) of the Bankruptcy Code and as reflected in the Plan, Administrative Claims, Administrative Expense Claims and Priority Tax Claims are not classified under the Plan.   *See*  11  U.S.C.  § 1123(a)(1)  (prohibiting  classification  of administrative and priority claims).  These unclassified Claims are not entitled to vote on the Plan as the Bankruptcy Code requires that they not be compromised under a plan.  In addition, Classes 1, 2 and 3 are also unimpaired and are not entitled to vote.

33.    Bankruptcy Rule 3017(d) permits a bankruptcy court to order that the disclosure statement and plan need not be mailed to any unimpaired class and to approve instead the mailing of a "notice that the class is designated in the plan as unimpaired and notice of the name and address from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, [and] notice of the time fixed for filing objections to and the hearing on confirmation." FED R. BANKR. P. 3017(d).

34.    Accordingly, the Debtor proposes to cause GJB to mail to Holders of Claims that are unimpaired under the Plan (collectively, the "Unimpaired Holders"), a notice in substantially the form attached hereto as Exhibit C (the "Notice of Non-Voting Status"), in lieu of a Solicitation Package.  The Notice of Non-Voting Status summarizes the treatment provisions of the Plan as applicable to the Classes of Claims or Interests held by the Unimpaired and Impaired Holders.  In addition, the Notice of Non-Voting Status provides (i) notice of the filing of the Plan, (ii) notice of the hearing on approval of the Disclosure Statement, (iii) instructions regarding the various ways to obtain and/or view copies of the Disclosure Statement, the Plan, and other documents, including how to obtain electronic copies of such documents, (iv) information regarding the Confirmation Hearing, and (v) directions for filing objections to the confirmation of the Plan.

35.    The Debtor believes that mailing the Notice of Non-Voting Status as described above satisfies the requirements of Bankruptcy Rule 3017(d) with respect to the Unimpaired Holders.  The Debtor further requests that the Court waive the requirements of Bankruptcy Rule 3017(d) as they may apply to the Impaired Holders and authorize the Debtor to provide for the mailing of the Notice of Non-Voting Status to such Holders in lieu of transmitting a Solicitation

Package to each such Holder.  Therefore, the Debtor requests that the Court direct that the Disclosure Statement and Plan need not be mailed to the Unimpaired and Impaired Holders.

### (viii)    *When No Notice or Transmittal is Necessary*

36.      The Debtor proposes that no Solicitation Packages or other notices need be transmitted to (i) Holders of Claims listed on the schedules, or any amendments thereto, that have already been paid in full during this case and (ii) any person to whom the Debtor mailed a notice of the commencement of the case and first meeting of creditors if such notice was returned marked "undeliverable" or "moved - no forwarding address" or for a similar reason, unless the Debtor has been informed in writing by such person of that person's new address.

### (ix)    *Informational Mailing of Solicitation Packages*

37.      Solicitation Packages and all forms of Ballots and notices proposed herein will be mailed for informational purposes to the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

## C.    Approval of Voting Tabulation Procedures

38.      To avoid uncertainty, to provide guidance to the Debtor, and to avoid the potential for inconsistent results, the Debtor requests that the Court, pursuant to section 105(a) of the Bankruptcy Code, establish the guidelines set forth below for tabulating the votes to accept or reject the Plan.

### (i)    *Votes Counted*

39.      As described below, the Debtor proposes that any Ballot that is timely received, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.

### (ii)    *Votes Not Counted*

40.    The Debtor further proposes that the following Ballots not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

(a)    any Ballot received after the Voting Deadline unless the Debtor has granted an extension of the Voting Deadline with respect to such Ballot;

(b)    any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

(c)    any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan;

(d)    any Ballot timely received that is cast in a manner that indicates neither an acceptance nor rejection of the Plan or that indicates both an acceptance and rejection of the Plan;

(e)    any unsigned Ballot; or

(f)    any Ballot that is electronically submitted or otherwise does not have an original signature.

41.    The Debtor proposes that any Ballot cast for a Claim designated as unliquidated, disputed, or as zero or unknown in amount and for which (i) no agreement with the Debtor has been reached regarding the classification and amount of such Claim for voting purposes, or (ii) no Bankruptcy Rule 3018(a) Order has been entered no later than five days prior to the Voting Deadline allowing the Claim for voting purposes shall be counted as a vote for a claim in the amount of $1.00.

### (iii)    *Changing Votes*

42.    Notwithstanding Bankruptcy Rule 3018(a), whenever two or more Ballots that comply with these procedures are cast voting the same Claim prior to the Voting Deadline, the last dated valid Ballot received prior to the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior Ballots, without prejudice to the Debtor's right to object to the validity of the second Ballot on any basis permitted by law, including under Bankruptcy Rule 3018(a), and, if the objection is sustained, to count the first dated valid Ballot for all purposes. This procedure will spare the Court and the Debtor the time and expense of responding to motions brought pursuant to Bankruptcy Rule 3018(a) attempting to show cause for changing votes.

### (iv)    *No Vote Splitting; Effect*

43.    The Debtor proposes that the Court clarify that claim splitting is not permitted and order that creditors who vote must vote all of their Claims within a particular Class to either accept or reject the Plan.

### (v)    *Withdrawal of Ballots*

44.    The Debtor proposes to permit any claimant who has delivered a valid Ballot for the acceptance or rejection of the Plan to withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Debtor at any time prior to the Voting Deadline.  A notice of withdrawal, to be valid, should (i) contain the description of the Claim to which it relates and the aggregate principal amount represented by such Claim, (ii) be signed by the withdrawing party in the same manner as the Ballot being withdrawn, (iii) contain a certification that the withdrawing party owns the Claim and possesses the right to withdraw the vote sought to be withdrawn, and (iv) be timely received by the Debtor's balloting agent, GJB.

      *(vi)*    ***No Voting By Electronic Means***

45.     The Debtor proposes that the Court require that original executed Ballots be returned to the Debtor and that the Debtor be authorized to invalidate any Ballot that is sent via facsimile or any other electronic means.

      *(vii)*    ***Non-Voting Classes***

46.     To the extent a Class has no members, such Class shall not be counted for voting purposes.  If a Class has members but no votes to accept or reject the Plan are received by any members of a particular Class, such Class shall be deemed to have accepted the Plan.

      *(viii)*    ***Cure of Defects in Ballot***

47.     The Debtor is authorized to provide to voters notification of defects in filed Ballots and an opportunity to cure same, but shall not be under any duty to do so, nor shall the Debtor or any other person or entity incur any liability for failure to provide such notification.

**D.     Establishment and Noticing of Plan Confirmation Hearing and Objection Deadline**

48.     Bankruptcy Rule 2002(b) requires at least 28 days' notice by mail to all creditors and indenture trustees of the time fixed for filing objections to, and the hearing to consider confirmation of a chapter 11 plan.  Similarly, Bankruptcy Rule 2002(d) requires notice by mail to equity security holders, unless the court orders otherwise.

49.     The Debtor requests that the Court schedule the hearing to consider confirmation of the Plan (the "Confirmation Hearing") on a date that will allow sufficient notice in accordance with Bankruptcy Rule 2002(b).  The Debtor also requests that the Court establish a deadline for filing objections to the Plan (the "Plan Objection Deadline") that is at least five business days before the Confirmation Hearing, at 5:00 p.m. (prevailing Eastern Time) on such date.

50.     The Debtor anticipates that it will require up to five business days after the date of approval of the Disclosure Statement to be in a position to provide the notices required under Bankruptcy Rule 2002, including the mailing of Solicitation Packages.

51.     Attached hereto as <u>Exhibit D</u> is a proposed form of notice of the Plan Objection Deadline and the Confirmation Hearing (the "<u>Confirmation Hearing Notice</u>").  The Confirmation Hearing Notice provides (i) notice of the filing of the Plan, (ii) notice of the approval of the Disclosure Statement, (iii) information regarding the Confirmation Hearing, and (iv) directions for filing objections to the confirmation of the Plan by the Plan Objection Deadline.

52.     As set forth above, the Confirmation Hearing Notice will be included in the Solicitation Packages mailed to Holders of Claims and Interests in Classes entitled to vote on the Plan and to each person or entity set forth on the 2002 Service List maintained in this case.  The substance of the information contained in the Confirmation Hearing Notice is also included in the Notice of Non-Voting Status and the Notice of Disputed Claim Status.

53.     Accordingly, the Debtor believes that service of the Confirmation Hearing Notice as described above will provide sufficient notice to all parties in interest of the Plan Objection Deadline and the Confirmation Hearing.

## REQUEST FOR AUTHORITY TO SEND DOCUMENTS
## AND NOTICES BY ELECTRONIC MEANS

54.     In the interests of efficiency and economy, the Debtor and the Balloting Agent respectfully request authority to send any documents or notices required under this Motion or the Court's order hereon in an electronic format, such as by sending the recipients of such documents or notices a compact disc containing the required papers in an electronic format. Upon request by any party in interest, the Debtor's counsel will provide hard copies of any such document or notice at its expense.

## NOTICE

55.     No trustee or examiner has been appointed in this chapter 11 case.  Notice of this Motion has been provided to: a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel to GEPF, LLC; and (d) those parties requesting notice in this case pursuant to Bankruptcy Rule 2002.  The Debtor submits that no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order substantially in the form of the order attached to the Motion as Exhibit E (i) approving the Disclosure Statement, (ii) approving the dates, procedures, and forms applicable to the Plan solicitation, noticing, and implementation process, (iii) approving certain vote tabulation procedures, (iv) establishing the deadline for filing objections to the Plan and scheduling the hearing to consider confirmation of the Plan, all as more particularly described above, and (v) granting such other and further relief as the Court deems appropriate.

Dated: August 7, 2014
      Wilmington, Delaware

**COUSINS CHIPMAN & BROWN, LLP**

_____
William E. Chipman, Jr. (No. 3818)
The Nemours Building
1007 North Orange Street Suite 1110
Wilmington, Delaware  19801
Telephone:     (302) 295-0193
Facsimile:     (302) 295-0199
Email:          chipman@cbllp.com

-and-

**GENOVESE JOBLOVE & BATTISTA, P.A.**
John H. Genovese (Fla. Bar No. 280852)
Heather L. Harmon (Fla. Bar No. 13192)
Michael L. Schuster (Fla. Bar No. 57119)
(Admitted *Pro Hac Vice*)
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Telephone:    (305) 349-2300
Facsimile:    (305) 349-2310)
Email:        JGenovese@Gjb-Law.com
              HHarmon@Gjb-Law.com
              MSchuster@Gjb-Law.com

*Counsel to Debtor and Debtor-In-Possession*